IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABDEL JABER SALEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-01812 |
| | ) | |
| v. | ) | Hon. Judge Sharon Coleman |
| | ) | |
| RANDY PFISTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PFISTER AND DETHROW AND NON-PARTY ILLINOIS
DEPARTMENT OF CORRECTIONS' MOTION FOR A PROTECTIVE ORDER**

Defendants Randy Pfister and Joseph Dethrow (collectively, "Defendants"), as well as non-party the Illinois Department of Corrections ("IDOC") by and through their attorney Kwame Raoul, Attorney General for the State of Illinois, hereby move for a protective order, and in support thereof, state as follows:

**BACKGROUND**

**I.      Plaintiff's Complaint**

On August 5, 2019, Plaintiff Abdel Saleh ("Plaintiff"), an inmate currently incarcerated within the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center, filed his Amended Complaint in this matter (the "Complaint"). (Dkt. No. 55.) The allegations in Plaintiff's Complaint are, as follows: (1) Plaintiff is a Muslim and regularly attends Ju'mah religious services at Stateville Correctional Center; (2) on September 8, 2017, the time at which Plaintiff was scheduled to be taken to commissary conflicted with the time that Plaintiff was scheduled to attend Ju'mah services; (3) Defendant Sergeant Joseph Dethrow told Plaintiff to "choose" whether to attend commissary or Ju'mah; (4) Plaintiff chose not to attend commissary on September 8, 2017

1

at his scheduled time and, instead, attended Ju'mah services; (5) days later, on September 13, 2017, Plaintiff submitted a grievance claiming that the September 8, 2017 incident amounted to religious discrimination; and (6) Plaintiff's grievance was denied based on representations from a lieutenant that Plaintiff had time to attend both commissary and Ju'mah on September 8, 2017. (*Id.*) Plaintiff names in his Complaint Defendants Dethrow and Pfister. Plaintiff names Defendant Dethrow for allegedly making Plaintiff "choose" between attending commissary and attending Ju'mah (*Id.*)

Plaintiff's only claims against Defendant Pfister are for his alleged role in denying Plaintiff's September 13, 2017 grievance. (Dkt. No. 55.) On September 3, 2019, Defendants filed a Motion to Dismiss Plaintiff's Complaint seeking, in part, to dismiss all claims against Defendant Pfister, arguing that Pfister's alleged involvement in the denial of Plaintiff's grievance is not a sufficient basis for liability under 42 U.S.C. § 1983 because Plaintiff's alleged injury was complete before he submitted the grievance and, therefore, Pfister's alleged denial of the grievance had no causal effect necessary to establish Pfister's personal liability under 42 U.S.C. § 1983. (Dkt. Nos. 63, 78.)

## II.  Progress of Discovery

On December 12, 2019, the parties filed a Joint Motion for an Extension of Time to Complete Discovery, wherein which the parties sought to extend the fact discovery cut-off in this matter, up to and including March 6, 2020. (Dkt. No. 79.) The parties' proposed extension would allow Plaintiff to take seven depositions. (*Id.*) These seven deponents included the two named Defendants in this matter, as well as five additional non-parties, including Lt. Edward Jacob and inmates James Ford, Kenneth Key, Wayne Newlin, and William Nally, all of which were to occur in February 2020. (*Id.*) On December 17, 2019, counsel for Plaintiff and Defendants appeared to present their Joint Motion for an Extension of Time. (Dkt. 81.) The Court asked the parties whether

they anticipated any further discovery in this matter, other than the seven scheduled depositions, and Plaintiff's counsel represented to defense counsel and the Court that they did ***not*** anticipate taking any additional depositions, other than the seven depositions at issue in the Motion. The Court extended fact discovery in this matter up to and including March 20, 2020. (*Id.*)

Plaintiff has since noticed four additional depositions in this matter, including a deposition of IDOC pursuant to Federal Rule of Civil Procedure 30(b)(6), which is discussed in more detail below. The fact witness depositions noticed by Plaintiff include inmate Rocky Forrester, Anna McBee (*i.e.*, the Grievance Officer at Stateville Correctional Center who responded to responded to Plaintiff's September 13, 2017 grievance) and Ada Johnson (*i.e.*, Plaintiff's correctional counselor who responded to Plaintiff's September 13, 2017 grievance).

At this time, the deposition of Defendant Dethrow is scheduled for February 20, 2020. The 30(b)(6) deposition of IDOC has been noticed for February 24, 2020. The deposition of Anna McBee has been noticed for March 5, 2020. The deposition of Ada Johnson has been noticed for March 16, 2020. All other depositions have occurred, with the exception of Rocky Forrester, whose deposition must be re-noticed.[1]

**III.    Plaintiff's Notice of a Rule 30(b)(6) Deposition of IDOC**

On December 20, 2019, Plaintiff issued a subpoena to take the deposition of IDOC pursuant to Federal Rule of Civil Procedure 30(b)(6). *See* Notice of Deposition, attached hereto as <u>Exhibit A</u>. The subpoena identified the following topics for the 30(b)(6) deposition:

1.    IDOC's investigation of, response to and determination regarding Mr. Saleh's September 13, 2017 grievance including, without limitation, identification of: persons interviewed; documents reviewed; oral or written communications related to, and documents generated

---

[1] The deposition of inmate Rocky Forrester was noticed to occur on February 20, 2020 at Stateville Correctional Center. Counsel for the parties appeared at Stateville for Forrester's deposition. However, Forrester, who is not represented by counsel in this matter, was issued a Notice of Deposition, and not a subpoena. Although present at Stateville on February 20, 2020, Forrester refused to sit for his deposition and testify.

        as part of, the investigation, response and determination; and the actions of all IDOC personnel in considering and reaching a determination about the grievance.

2.    IDOC's search for documents responsive to Mr. Saleh's requests for production, including without limitation, facts identified to support the assertion of an objection to any such request as "unduly burdensome."

3.    IDOC's search for, or destruction of, sign-in sheets for September 7, 2017 and September 11, 2017 that include signature for, or references to, Lieutenant Edward Jacob.

4.    IDOC's search for, or destruction of, documents or records reflecting Wayne Newlin's purchases from the commissary on September 7, 2017.

5.    Identification of the times prisoners were taken to the commissary on September 7, 2017 and September 11, 2017, whether any prisoners on those dates were permitted to go to the commissary on lines other than their cell block lines, and if so, for what reasons were permitted to go to the commissary on a line other than their cell block line on September 7, 2017 and September 11, 2017.

6.    IDOC's policies or procedures related to prisoner requests to go to the commissary on a line other than his cell block line.

On December 31, 2019, the parties met and conferred via telephone regarding Plaintiff's proposed 30(b)(6) deposition of IDOC. Following this discussion, Defendants produced additional documents to Plaintiff, and Plaintiff agreed to withdraw Topic No. 4.

On January 31, 2020, defense counsel tendered a letter to Plaintiff's counsel setting forth Defendants' specific objections to the remaining topics for a Rule 30(b)(6) deposition of IDOC. *See* January 31, 2020 letter, attached hereto as Exhibit B. On February 3, 2020, the parties met and conferred via telephone to discuss defense counsel's letter. During the parties' phone call, Plaintiff agreed to withdraw Topics Nos. 1 and 2 from the Rule 30(b)(6) deposition.

At that time, Plaintiff's counsel maintained that Plaintiff wishes to proceed with Topic Nos. 1, 5, and 6, despite Plaintiff's objections. That same day, Plaintiff issued an amended subpoena rescheduling the 30(b)(6) deposition for February 24, 2020. *See* Amended Notice of Deposition, attached hereto as Exhibit C.

Accordingly, pursuant to Federal Rule of Civil Procedure 26(c)(1) and Local Rule 37.2, the undersigned counsel has in good faith conferred with Plaintiff's counsel, without success, to resolve the aforementioned discovery issue without the Court's intervention.

## ARGUMENT

Federal Courts have broad discretion in matters relating to discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Rule 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In determining scope, courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs it likely benefit." *Id*. The court must limit discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

The Supreme Court has cautioned that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense….' Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando,* 441 U.S. 153, 177 (1979).

Effective December 1, 2015, Rule 26(b)(1) was amended to eliminate the court's discretion to expand discovery to the subject matter of the action, requiring that discovery be "'proportional' to various factors." *Polyone Corp. v. Lu*, No. 14 C 10369, 2015 WL 9489915, at *2 (N.D. Ill. Dec. 30, 2015). Discovery must be "*proportional* to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1) (emphasis added). This amendment addressed the issue of over-discovery and encourages judges to be more aggressive in identifying and discouraging discovery overuse. *L. Zingerman, D.D.S., P.C. v. Nissan N. Am., Inc.*, No. 14 C 7835, 2016 WL 4206062, at *3 (N.D. Ill. Aug. 10, 2016), citing Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.

**I.     The Depositions of Anna McBee, Ada Johnson, and Topic No. 1 of IDOC's Rule 30(b)(6) deposition would not lead to the discovery of relevant evidence.**

The discovery sought by Plaintiff regarding various individuals' investigation of his September 13, 2017 grievance is not relevant to the claims at issue in this litigation. Plaintiff's Complaint involved a single instance on September 8, 2017, when Plaintiff alleges that was required to "choose" between attending commissary and attending Ju'mah. Days later, on September 13, 2017, Plaintiff submitted a grievance claiming that the events of September 8, 2017 amounted to religious discrimination. However, as more fully set forth in Defendants' *Motion to Dismiss Plaintiff's Amended Complaint* (Dkt. No. 63) and *Defendants' Reply in Support of their Motion to Dismiss Plaintiff's Amended Complaint* (Dkt No. 78), the process by which Plaintiff's grievance was denied has no bearing on any Defendant's liability under 42 U.S.C. § 1983 because Plaintiff filed his grievance *after* his alleged injury was complete.

In order to succeed on a claim under Section 1983, a plaintiff must establish that the Defendant is personally responsible for the deprivation of the plaintiff's constitutional rights. *See Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). The standard "requires proof of causation, *i.e.* that the individual defendant actually *caused* the Plaintiff's injury through his *own conduct*." *Volk v. Coler*, 638 F. Supp. 1540, 1547 (C.D. Ill. July 8, 1986) (emphasis in original). In the case of an ongoing constitutional violation, such as an inmate's denial of adequate medical care for an existing condition, an IDOC official who denies an inmate's grievance may be said to have "caused" or "participated in" the violation of that inmate's constitutional rights because the denial of the inmate's grievance further denied him relief from the ongoing violation. *See Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *4 (N.D. Ill. July 2, 2001). However, that is *not* so when that grievance complains of a single incident that came and went before the inmate filed that grievance. *See id.* ("Of course, if the plaintiff's injury is complete at the time the grievance is filed, denying the grievance or failing to respond to it cannot be grounds for liability because it caused no injury."). Accordingly, the actions that Defendant Pfister, Anna McBee, Ada Johnson, or anyone took to properly investigate and respond to Plaintiff's grievance are neither a basis for liability nor relevant to Plaintiff's claims of religious discrimination.

Further, the testimony of Anna McBee, Ada Johnson, and IDOC's designee for Topic No. 1 would be irrelevant for the additional reason that Pfister is the *only* Defendant named in this action in relation to the denial of Plaintiff's grievance. Personal liability under Section 1983 requires a defendant's direct, personal involvement in a situation that causes injury to an inmate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). As such, any actions taken by anyone else in response to Plaintiff's grievance, other than Defendant Pfister, would have no bearing on Pfister's liability. It is, therefore, not relevant how Anna McBee, Ada Johnson, or anyone else at

IDOC responded to Plaintiff's grievance. It is not relevant how they investigated Plaintiff's claims, who they spoke to, or how they arrived at their conclusions that Plaintiff's grievance should be denied.

Even if Plaintiff could state a claim under 42 U.S.C. § 1983 against those individuals who were involved in responding to his September 13, 2017 grievance—which he cannot—it is crucial to note that Plaintiff cannot amend his complaint to add any additional defendants. All responses to Plaintiff's September 13, 2017 grievance were issued in 2017. Pursuant to the two-year statute of limitations for causes of actions under 42 U.S.C. § 1983, any claims against the individuals involved in responding to Plaintiff's grievance would be time-barred. *See CBS Outdoor, Inc. v. Village of Plainfield, Illinois*, 959 F. Supp. 1054, 1061 (N.D. Ill. 2013) (recognizing that causes of action under 42 U.S.C. § 1983 are subject to a two-year limitation period). Accordingly, even if Anna McBee or Ada Johnson were to testify that they or anyone else at IDOC were personally involved in responding to Plaintiff's grievance, Plaintiff is barred from adding them or any other such individuals as defendants to his Complaint.

At his deposition on February 14, 2020, Defendant Pfister testified that he had no personal involvement in the process by which Plaintiff's September 13, 2017 grievance was denied. Specifically, he testified that the signatures made on behalf of the Warden's Office on the forms pertaining to Plaintiff's grievance were not made by him. He testified that he did not sign any documents related to Plaintiff's grievance, and instead recognized those signatures as having been made by a designee of the Warden's Office responsible for responding to grievances on behalf of the Warden. He further testified that, when a designee of the Warden's Office responds to a Plaintiff's grievance on his behalf, he has no involvement whatsoever in the process by which that grievance is responded to. Indeed, Pfister testified that he had not seen or heard of Plaintiff's

8

grievance until after Plaintiff filed this lawsuit. Accordingly, no further discovery on this issue is needed. Plaintiff's counsel has maintained that, despite Pfister's lack of personal involvement, he is nevertheless responsible for the actions of his designees because of his position as Warden. However Plaintiff's argument, albeit incorrect, poses a question of law for this Court, not a question of fact that can be answered with any further discovery.

As such, the depositions of Anna McBee and Ada Johnson will not—and, indeed, cannot––lead to the discovery of any evidence relevant to this litigation. Similarly, Topic No. 1 of IDOC's 30(b)(6) is not relevant because Plaintiff seeks testimony regarding "IDOC's investigation of, response to and determination regarding Mr. Saleh's September 13, 2017 grievance," including "identification of persons interviewed, documents reviewed, oral or written communications related to, and documents generated as part of, the investigation, response and determination," and "the actions of all IDOC personnel in considering and reaching a determination about the grievance." Further, because none of these depositions will lead to the discovery of relevant evidence, the burden and expense of the proposed discovery vastly outweigh its likely benefit. *See* FED. R. CIV. P. 26(b)(1). Accordingly, non-parties Anna McBee and Ada Johnson should not endure the burden of testify in this matter, and IDOC should not endure the burden of designating an individual to testify as to Topic No. 1.

**II. To the extent that the depositions of individuals involved in IDOC's response to Plaintiff's grievance proceed, Topic No. 1 is cumulative and duplicative.**

As set forth above, Topic No. 1 regarding "IDOC's investigation of, response to and determination regarding Mr. Saleh's September 13, 2017 grievance" is not relevant to the claims at issue in this litigation. For those reasons alone, Defendants are entitled to a protective order prohibiting Plaintiff from taking IDOC's deposition with regard to Topic No. 1. However, if the Court is inclined to allow Plaintiff to proceed with the depositions of Anna McBee, Ada Johnson,

9

and other individuals who were allegedly involved in responding to Plaintiff's September 13, 2017 grievance, then any testimony provided by IDOC's corporate designee pursuant to Rule 30(b)(6) regarding Topic No. 1 would be cumulative and duplicative. If the Court allows the depositions of Anna McBee and Ada Johnson to proceed as noticed, these individuals can testify about everything they did to investigate and respond to Plaintiff's grievance, as well as everything that they know others did in response to the grievance. There is no need for IDOC to designate an individual to also testify about what Anna McBee did, what Ada Johnson did, or what any other IDOC individual did in order to respond to Plaintiff's grievance.

To be sure, it is not relevant what *any* IDOC individuals did in response to Plaintiff's grievance because such testimony could have no bearing on the liability of any Defendant in this case. Nevertheless, if the Court believes that testimony regarding how individuals at IDOC responded to Plaintiff's grievance is relevant, then this discovery can be accomplished through less burdensome means than through a Rule 30(b)(6) deposition. Rather than asking IDOC to testify what each and every individual did in response to Plaintiff's grievance, Plaintiff can simply depose those individuals involved in the grievance process and ask them what they did, who they spoke to, and why they denied Plaintiff's grievance.

### III. IDOC is unable to designate an individual to testify as to Topic No. 5 of the Rule 30(b)(6) deposition.

Topic No. 5 requests testimony regarding IDOC's "identification of the times prisoners were taken to the commissary" on September 8, 2017 and September 11, 2017, "whether any prisoners on those dates were permitted to go to the commissary on lines other than their cell block lines, and if so, for what reasons were permitted to go to the commissary on a line other than their cell block line." However, IDOC is unable to designate any individual who can testify to Topic No. 5 because Stateville Correctional Center does not record and maintain the information

requested in Topic No. 5 in the regular course of business. Rather, defense counsel has relayed the following information to Plaintiff's counsel.

Stateville Correctional Center follows a regular schedule in which certain galleries are scheduled to attend commissary on specific days of the week on any given month. However, these schedules are not stored in the regular course of business. Further, an entire gallery does not attend commissary at the same time. Rather, inmates in any given gallery are taken to commissary in "lines," typically consisting of around 30 inmates. IDOC does not track which inmates are assigned to which "line" or what times those "lines" are taken to commissary. Additionally, IDOC does not track when an inmate requests to go to commissary on a line other than the line for which he is scheduled, nor does IDOC track the reason why the inmate has requested to be taken to commissary at an alternative time.

If an inmate buys something at commissary, a receipt is generated that contains the date and also often contains a time-stamp. These receipts are the only documents known to IDOC that indicate when specific inmates at Stateville went to commissary on a particular date. However, when this information is stored, the information is linked to a particular inmate, not to a particular date. Therefore, in order to see when an inmate went to commissary, IDOC would have to perform a search with regard to that specific inmate. To the best of defense counsel's investigation to date, IDOC does not have the searching capability to search for all inmates who went to commissary on a particular date and pull-up their time-stamped receipts.

For the foregoing reasons, IDOC is not able to produce any individual who can testify as to which inmates went to commissary on a particular date, the times that they went to commissary, or whether any inmates were taken on a line other than the line for which he was scheduled. IDOC has no information regarding Topic No. 5 other than that which can be ascertained through its

documents, and no documents known to IDOC at this time can answer the questions raised by Topic No. 5.

Further, the parties have been actively meeting and conferring regarding whether IDOC can produce any other documents that can identify what inmates went to commissary on September 8, 2017 and at what times. To the extent that any additional documents exist and can be retrieved, the discovery sought in Topic No. 5 can be produced through less burdensome means.

### IV. Testimony regarding Topic No. 6 of IDOC's Rule 30(b)(6) deposition would not lead to the discovery of relevant evidence.

Topic No. 6 requests testimony regarding "IDOC's policies or procedures related to prisoner requests to go to the commissary on a line other than his cell block line." However, there are no written policies setting forth the procedures related to inmates' requests to go to the commissary on a line other than the line for which that inmate is scheduled. Rather, defense counsel has repeatedly informed Plaintiff's counsel that IDOC's policy regarding inmates' requests to go to commissary on a line other than the line for which they are scheduled is, as follows: Inmates may request commissary or may request to move their commissary time. Ordinarily, lieutenants, sergeants, and correctional officers who are responsible for escorting inmates to commissary follow the schedule, but these lieutenants, sergeants, and correctional officers may, at their discretion, allow an inmate to go to commissary at a different time than what is scheduled. Those discretionary decisions are always determined on a case-by-case basis.

Defense counsel has offered to amend Defendants' written discovery responses to include this policy, but Plaintiff has refused this offer and insisted on proceeding with a Rule 30(b)(6) deposition on Topic No. 6.

However, testimony regarding Topic No. 6 would not lead to the discovery of any relevant evidence. Should IDOC produce an individual to testify regarding Topic No. 6, the witness could

not testify to any more information than the policy information written herein. Plaintiff's only purpose in deposing IDOC on this topic would be to subject IDOC's corporate designee to improper hypothetical questions or other argumentative questioning. Such questioning would serve no relevant purpose in this litigation. Accordingly, because this discovery can be accomplished through less burdensome means (*i.e.*, amending Defendants' written discovery responses to include this language), IDOC should not have to designate an individual to testify as to Topic No. 6.

**V.     The needs of this litigation do not require Plaintiff to exceed ten depositions.**

Pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i) a party is required to seek leave of Court to take more than ten depositions. To date, Plaintiff has already taken seven depositions in this matter, stated his intent to re-notice the deposition of inmate Rocky Forrester, and has noticed an additional four depositions: Defendant Dethrow, Anna McBee, Ada Johnson, and the Rule 30(b)(6) deposition of IDOC. Plaintiff has not sought leave of Court to exceed ten depositions.

Allowing Plaintiff to exceed ten depositions in this case would not be proportionate to the needs of this litigation. The claims in Plaintiff's Complaint could not be more straight-forward. Plaintiff alleges that, on a single instance on September 8, 2017, he was required to "choose" between attending commissary and attending Ju'mah services, so he chose to forego commissary and attend Ju'mah. The only harm that Plaintiff is alleged to have suffered in his case is foregoing a single trip to commissary over two years ago. Indeed, Plaintiff testified at his deposition that, in the 25 years that he has been incarcerated, the only time that he ever perceived a conflict between attending commissary and attending a religious service was on September 8, 2017. Plaintiff testified that a similar conflict never happened before and has never happened since.

Plaintiff has no reasonable basis for seeking twelve depositions in this case. Only two of Plaintiff's twelve noticed depositions are for the named defendants in this case, Dethrow and Pfister. The other nine include eight fact witnesses and a Rule 30(b)(6) deposition of IDOC. As set forth above, most of the remaining depositions in this case would not lead to the discovery of any relevant evidence, which further illustrates why taking such depositions would be disproportional to the needs of this case. Accordingly, the burden or expense of Plaintiff's proposed discovery greatly outweighs its likely benefit, and Defendants are entitled to a protective order.

## **CONCLUSION**

WHEREFORE, Defendants Joseph Dethrow, Randy Pfister, and non-party the Illinois Department of Corrections respectfully request that this Honorable Court grant them a protective order, as follows: (1) striking the subpoenas for the depositions of Anna McBee, Ada Johnson, and of IDOC pursuant to Federal Rule of Civil Procedure 30(b)(6), and (2) for any other relief that the Court deems just under the circumstances.

Dated: February 21, 2020

                                                                                          Respectfully Submitted,

KWAME RAOUL                                           */s/ Maebetty Kirby*
Attorney General of Illinois                           Maebetty Kirby
                                                                   Assistant Attorney General
                                                                   Office of the Illinois Attorney General
                                                                   100 West Randolph Street, 13th Floor
                                                                   Chicago, Illinois 60601
                                                                   (312) 814-3649
                                                                   mkirby@atg.state.il.us

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on February 21, 2020, she electronically filed the foregoing document with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

Respectfully Submitted,

KWAME RAOUL
Attorney General of Illinois

*/s/ Maebetty Kirby*
Maebetty Kirby
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3649
mkirby@atg.state.il.us