

**OFFICE OF THE ATTORNEY GENERAL**
STATE OF ILLINOIS

**Kwame Raoul**
ATTORNEY GENERAL

January 31, 2020

*Via electronic mail*:
James A. Rolfes
Caitlin O. Young
Reed Smith LLP
10 S. Wacker Drive, 40th Floor
Chicago, Illinois 60606
(312) 207-1000
jrolfes@reedsmith.com
coyoung@reedsmith.com

**RE:** *Abdel Jaber Saleh v. Randy Pfister, et al.*, **18 CV 1812**

Dear Counsel:

This letter serves to address Plaintiff's *Federal Rule of Civil Procedure 30(b)(6) Deposition Notice to the Illinois Department of Corrections* seeking to take the deposition of the Illinois Department of Corrections ("IDOC") on the following six (6) topics. For the following reasons, Defendants object to several of Plaintiff's proposed topics, and IDOC cannot produce an individual to testify as to the remaining topics.

The parties initially met and conferred in a telephone conference on December 31, 2019 to address Defendants' objections to Plaintiff's proffered deposition topics. This letter serves to more formally set forth Defendants' positions for your review and consideration. Please advise if, in light of this letter, Plaintiff will withdraw any topics.

**DEPOSITION TOPICS**

**1. IDOC's investigation of, response to and determination regarding Mr. Saleh's September 13, 2017 grievance including, without limitation, identification of: persons interviewed; documents reviewed; oral or written communications related to, and documents generated as part of, the investigation, response and determination; and the**

**actions of all IDOC personnel in considering and reaching a determination about the grievance.**

RESPONSE: As we discussed during our meet and confer telephone call, Topic No. 1 is not relevant to the claims and defenses in this case, nor is it proportional to the needs of this litigation, especially given the other discovery that is already scheduled to occur in this case, such as the scheduled depositions of Randy Pfister and Anna McBee.

Plaintiff's Amended Complaint alleges that, on a single instance on September 8, 2017, he was scheduled to be taken to commissary at the same time that he was scheduled to attend Ju'mah services. Plaintiff alleges that he could not attend both, so he chose to attend Ju'mah services and chose to forego his trip to commissary. Defendants have maintained that, even accepting Plaintiff's allegations as true, foregoing commissary on one, single occasion does not amount to a "substantial burden" to Plaintiff's rights under the First Amendment. This is especially true given that Plaintiff testified in his deposition that September 8, 2017 was the only instance that his commissary schedule conflicted with Ju'mah services in the 25 years that Plaintiff has been incarcerated.

On September 13, 2017, Plaintiff submitted a grievance claiming that he had to choose between going to commissary and going to Ju'mah on September 8, 2017, in which Plaintiff requests "one million dollars for the religious discrimination." Warden Randy Pfister, as Chief Administrative Officer, denied Plaintiff's grievance, and for this, Plaintiff has sued Pfister in his individual capacity for violating Plaintiff's constitutional rights under 42 U.S.C. § 1983. However, for the reasons set forth in Defendants' pending Motion to Dismiss, no individual involved in the grievance process, including Pfister, could have acted with the requisite degree of personal involvement to sustain a cause of action under 42 US.C. § 1983 because there can be no causal link between the denial of Plaintiff's grievance and any injury sustained by Plaintiff. Because Plaintiff's entire injury was that he had to forego a single trip to commissary on September 8, 2017, that injury was complete before Plaintiff ever submitted his grievance. Therefore, the denial of Plaintiff's grievance did not cause any denial of Plaintiff's constitutional rights. As such, the disposition of Plaintiff's grievance is not relevant to Plaintiff's claims.

Moreover, the parties have already engaged in extensive discovery regarding Plaintiff's grievance, and no new relevant information would come from a 30(b)(6) deposition about "IDOC's investigation" of Plaintiff's grievance. Defendants have already produced all of the grievance-related documents in IDOC's files. More importantly, Plaintiff has already noticed the deposition of Randy Pfister for February 14, 2020 and the deposition of Anna McBee (the grievance officer) for March 5, 2020. Both deponents will be able to testify about their investigation of Plaintiff's grievance, and there is no relevant information that a 30(b)(6) witness could disclose about IDOC's investigation of the grievance that could not be

provided by Pfister and McBee, who actually conducted the investigation and responded to the grievance.

Topic No. 1 is also not relevant to this litigation because IDOC is not a party to this action. Defendant Randy Pfister is, and Defendant Pfister will testify at his deposition about his investigation of Plaintiff's grievance.

For these reasons, Defendants maintain that Topic No. 1 is not relevant. Defendants request that Plaintiff wait until after the depositions of Pfister and McBee have been concluded to determine whether any information not obtained at their depositions could be obtained by a 30(b)(6) deposition of IDOC regarding Topic No. 1. Please advise if Plaintiff will withdraw Topic No. 1 or wait until after the depositions of Pfister and McBee to notice a 30(b)(6) deposition for Topic No. 1.

**2. IDOC's search for documents responsive to Mr. Saleh's requests for production, including without limitation, facts identified to support the assertion of an objection to any such request as "unduly burdensome."**

RESPONSE: IDOC objects to Topic No. 2 regarding why Defendants objected that complying with certain written discovery requests would be unduly burdensome. As we previously discussed during our meet and confer telephone call, it is improper for a party to use a 30(b)(6) deposition as a means to adjudicate discovery disputes.

**3. IDOC's search for, or destruction of, sign-in sheets for September 7, 2017 and September 11, 2017 that include signature for, or references to, Lieutenant Edward Jacob.**

RESPONSE: As is the case with Topic No. 2, Topic No. 3 improperly seeks to use a 30(b)(6) deposition as a means to adjudicate discovery disputes.

As an initial matter, the only relevant date in this litigation is September 8, 2017, the date on which Plaintiff alleges that he had to choose between going to commissary and going to Ju'mah. I understand that Topic No. 3 contains a typo and that Plaintiff is concerned with September 8, 2017, not September 7, 2017. Nevertheless, there is no reason why the location of any individual, including Lt. Jacob, on September 11, 2017 is relevant to this action.

With regard to the kinds of "sign-in sheets" or other documents that indicate Lt. Jacob's location throughout the Stateville Correctional Center facility on September 8, 2017, Defendants have identified two groups of documents. The first group of documents are the Duty Rosters, which show which officers were called to duty at Stateville Correctional Center on September 8, 2017 and the posts to which they were called on that date. These Duty Rosters have already been produced to Plaintiff.

The second group of documents are the Shift Activity Logs for September 8, 2017. Defendants have agreed to produce the Shift Activity Logs from September 8,

3

2017. However, as I have explained to you, the room in which these Shift Activity Logs are being stored has been designated as a safety hazard. Stateville employees are not permitted to enter this area, as the area has not yet been designated safe for entry. Accordingly, IDOC cannot engage in any further search for these documents until this area is safe.

**4. IDOC's search for, or destruction of, documents or records reflecting Wayne Newlin's purchased from the commissary on September 7, 2017.**

RESPONSE: Pursuant to Plaintiff's January 15, 2020 email, Plaintiff agreed to withdraw Topic No. 4. Accordingly, IDOC will not produce someone to testify as to Topic No. 4.

**5. Identification of the times prisoners were taken to the commissary on September 7, 2017 and September 11, 2017, whether any prisoners on those dates were permitted to go to the commissary on lines other than their cell block lines, and if so, for what reasons were permitted to go to the commissary on a line other than their cell block line on September 7, 2017 and September 11, 2017.**

RESPONSE: Stateville Correctional Center does not record and maintain the information requested in Topic No. 5 in the regular course of business.

Stateville follows a regular schedule in which certain galleries are scheduled to attend commissary on specific days of the week on any given month. However, these schedules are not stored in the regular course of business. IDOC does not track when an inmate requests to go to commissary on a line other than his cell block line or the reason why the inmate has requested to be taken to commissary at an alternative time.

If an inmate buys something at commissary, a receipt is generated that contains the date and also often contains a time-stamp. These receipts are the only documents known to IDOC that indicate when specific inmates at Stateville are taken to commissary. However, when this information is stored, the information is linked to a particular inmate, not to a particular date. Therefore, in order to see when an inmate went to commissary, IDOC would have to perform a search with regard to that specific inmate. IDOC does not have the searching capability to search for all inmates who went to commissary on a particular date.

For the foregoing reasons, IDOC is not able to produce any individual who can testify as to which inmates went to commissary on September 8, 2017, the times that they went to commissary, or whether any inmates were taken on a line other than their cell block line. As such, IDOC is unable to produce a qualified individual who can testify as to Topic No. 5.

**6. IDOC's policies or procedures related to prisoner requests to go to the commissary on a line other than his cell block line.**

4

RESPONSE: There are no written policies setting forth the procedures related to inmates' requests to go to the commissary on a line other than his cell block line. Inmates may request commissary or may request to move their commissary time. Ordinarily, lieutenants, sergeants, and correctional officers who are responsible for escorting inmates to commissary follow the schedule, but these lieutenants, sergeants, and correctional officers may, at their discretion, allow an inmate to go to commissary at a different time than what is scheduled. Those discretionary decisions are always determined on a case-by-case basis.

Should IDOC produce an individual to testify regarding Topic No. 6, the witness would testify that the question of whether an inmate may go to commissary on a line other than his cell block line is determined on a case-by-case basis at the discretion of individual officers. The witness could not offer any more substantive information than that.

Instead of a 30(b)(6) deposition regarding Topic No. 6, Defendants agree to supplement their written responses to Plaintiff's Interrogatories to incorporate the information set forth in this response. Written discovery responses will accomplish the same discovery purpose by less burdensome means. Please advise if you will withdraw Topic No. 6 upon agreement that Defendants will supplement their written responses to Plaintiff's Interrogatories.

Dated: January 31, 2020

Sincerely,

s/ *Maebetty Kirby*
Maebetty Kirby
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3649
mkirby@atg.state.il.us