IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ABDEL JABER SALEH,<br><br>                Plaintiff,<br><br>vs.<br><br>RANDY PFISTER, individually and in his official capacity as former Warden of Stateville Correctional Center, Illinois Department of Corrections; JOEY DETHROW, individually and in his official capacity as former Correctional Sergeant, Illinois Department of Corrections; and SHERWIN MILES, in his official capacity as Warden of Stateville Correctional Center, Illinois Department of Corrections,<br><br>                Defendants. | CIVIL ACTION NO. 1:18-cv-01812<br><br>Hon. Sharon Johnson Coleman<br>Hon. Magistrate Judge Jeffrey Cole |

**PLAINTIFF ABDEL JABER SALEH'S MOTION TO COMPEL
IDOC 30(b)(6) DEPOSITION AND
RESPONSE TO REQUEST FOR PRODUCTION**

Plaintiff Abdel Jaber Saleh, an inmate at the Illinois Department of Corrections ("IDOC") Stateville Correctional Center, through his undersigned counsel, hereby moves the Court pursuant to Federal Rule of Civil Procedure 37(a)(2)(B) for an order compelling: (1) IDOC to designate a witness to respond to Mr. Saleh's Amended FRCP 30(b)(6) Deposition Notice to IDOC, Topics 1, 2, 5 and 6;[1] (2) Defendants Randy Pfister and Joey Dethrow, individually and in their official capacities as Warden and Correctional Sergeant at IDOC's Stateville Correctional Center, to provide a complete response to Mr. Saleh's Third Request for Production of Documents ("RFP") Number 1; and (3) IDOC to identify Defendant Pfister's "designee."  Additionally, pursuant to

---

[1] Mr. Saleh has agreed to withdraw topics 3 and 4 from the Amended FRCP 30(b)(6) Deposition Notice.

FRCP 37(a)(5)(A), Mr. Saleh requests IDOC and Defendants pay Mr. Saleh's reasonable expenses incurred in making the motion, including attorneys' fees. In support of this motion, Mr. Saleh states as follows:

1. As a Muslim, Mr. Saleh's sincerely held religious beliefs require him to attend Jumu'ah, a Friday afternoon prayer service. (Am. Compl., ECF No. 55, ¶ 9.) Jumu'ah is the "central religious ceremony of Muslims," and weekly attendance at Jumu'ah is "commanded by the Koran . . . ." *Banks v. Almazar*, Case No. 07-cv-5654, 2011 U.S. Dist. LEXIS 33739, at *10 (N.D. Ill. Mar. 30, 2011) (citations omitted). Adult males cannot "substitute" Jumu'ah by attending a different service or by switching service to another day or time. *Id.* at *10.

2. On September 8, 2017, Mr. Saleh's commissary time conflicted with Jumu'ah services. (Am. Compl., ECF No. 55, ¶¶ 10, 17–19.) When Mr. Saleh informed Defendant Dethrow that this schedule would cause Mr. Saleh to miss his religiously obligatory attendance at Jumu'ah, Defendant Dethrow refused to allow Mr. Saleh to attend commissary with an earlier line; instead Defendant Dethrow forced Mr. Saleh to choose between attending Jumu'ah services or going to the commissary, stating that Defendant Dethrow's Christian religious practices allowed Defendant Dethrow to skip church when needed. (*Id.* at ¶¶ 10–16.) Mr. Saleh was therefore unable to go to the commissary on September 8, 2017. (*Id.* at ¶¶ 17–19.)

3. On September 11, 2017, Defendant Dethrow again denied Mr. Saleh's request to attend a make-up commissary trip, despite allowing at least three other inmates from Mr. Saleh's gallery to attend a make-up trip to the commissary that day. (Am. Compl., ECF No. 55, ¶¶ 20–23.) The Amended Complaint further alleges that Defendant Dethrow has allowed Christian inmates to attend earlier commissary trips or promptly attend a make-up commissary trip when the

Christian inmates have missed their scheduled commissary visit for religious services and classes. (*Id.* at ¶ 23.)

4. Mr. Saleh filed a grievance report detailing Defendant Dethrow's actions. (Am. Compl., ECF No. 55, ¶ 25.) He further sent a letter to Defendant Pfister, the Warden of Stateville, detailing the events in questions and requesting that Defendant Pfister take proper action to stop the religious discrimination against Mr. Saleh. (*Id.*) Defendant Pfister however, signed off on the grievance officer's denial of Mr. Saleh's grievance, made a false statement regarding the commissary schedule on September 8, 2017, and informed Mr. Saleh that no corrective action would be taken. (*Id.* at ¶¶ 26–27; *see also* Ex. 2 to the Am. Compl., ECF No. 55-2.)

5. As part of discovery in this case, Mr. Saleh (while proceeding *pro se*) served RFPs on Defendants Pfister and Dethrow seeking Mr. Saleh's master file (which typically includes documentation related to his grievances) and documents recording who went to the commissary on the relevant dates. Of significance here, on January 16, 2019, Defendants, in responses provided by the Illinois Attorney General and signed off on by Assistant Attorney General Amanda Kozar, responded to these RFPs, as follows:

> **1. A copy of Plaintiff's Master File**.
>
> [Pfister and Dethrow] RESPONSE: Defendants object to Request No. 1 as overly broad, not proportional to the needs of the case, and seeking documents that are not relevant to any claim or defense at issue in this matter. Subject to, and without waiving these objections, see IDOC 000001 – 77, included with these Responses.
>
> **3. B-house commissary list of names and times of every inmate went to commissary on 9/8/2017, 9/11/2017 and 9/12/2017.**
>
> [Pfister and Dethrow] RESPONSE: Defendants object to Request No. 3 as overly broad, not proportional to the needs of the case, unduly burdensome, and seeking documents that are not relevant to any claim or defense at issue in this matter.

*See* Defs. Pfister and Dethrow's Resp. to Pl.'s First RFPs, attached as **Exhibit 1** to the Declaration of James A. Rolfes ("Rolfes Decl."), attached hereto as **Exhibit A**.

6. The documents Defendants produced did not include any documents related to the incidents that were the subject of his Complaint, nor any documents associated with the grievances and letters he had written regarding the incidents. *See* Rolfes Decl. at ¶ 7, Ex. A. As noted in their objection, Defendants also did not produce any documents related to when inmates went to the commissary.

7. Mr. Saleh (while proceeding *pro se*) also served Defendant Pfister with interrogatories asking when Defendant Pfister became aware of the alleged incident, what action Defendant Pfister as Warden had taken to address the matter and what training had been provided to guards concerning religious tolerance. In a response provided by the Illinois Attorney General and signed by Assistant Attorney General Amada Kozar, Defendant Pfister objected to every interrogatory and did not provide any response, including as reflected in the following responses:

**1. When did you become aware of the Jumuah v. Commissary situation?**

RESPONSE: Defendant objects to Interrogatory No. 1 as overly broad and vague as written.

**2. What kind of action did you take?**

RESPONSE: Defendant objects to Interrogatory No. 2 as overly broad and vague as written.

**3. Have you ever contacted the Plaintiff regarding this situation?**

RESPONSE: Defendant objects to Interrogatory No. 3 as overly broad and vague as written.

**5. Did you ever provided your staff with religious tolerance training?**

RESPONSE: Defendant objects to Interrogatory No. 5 as overly broad and vague as written.

> **7. Have you addressed the other Defendant in person? And if so what was the outcome of that meeting?**
>
> RESPONSE: Defendant objects to Interrogatory No. 7 as overly broad, unduly burdensome, and vague as written.

*See* Def. Pfister's Resp. to Pl.'s First Set of Interrogs., attached as **Exhibit 2** to the Rolfes Decl.

8. On April 5, 2019, the Court appointed James Rolfes of Reed Smith LLP to represent Mr. Saleh. (*See* ECF No. 44). Thereafter, Mr. Saleh served a second set pf RFPs seeking all documents related to the matters alleged in Mr. Saleh's Complaint (ECF No. 1), and related to his grievance about those matters. Of significance here, on July 8, 2019, Defendants in responses provided by the Illinois Attorney General and signed off on by an Assistant Attorney General Amanda Kozar, responded to three of those RFPs on behalf of both Defendants Dethrow and Pfister as follows:

> **5. All Documents containing any communication or statements, notes and/or comments of persons who have knowledge of facts regarding any occurrences, incidents, complaints and/or damages alleged in Plaintiff's Complaint.**
>
> RESPONSE: Defendant responds that he is unaware of any such documents at this time.
>
> **6. All Documents, including, but not limited to, policies, handbooks, guidelines, training materials, or rules concerning the scheduling and coordination of inmate trips to the commissary, including, but not limited to, all policies, handbooks, guidelines, training materials, or rules concerning the circumstances under which an inmate may request and attend a trip to the commissary with a different group or "line" of inmates.**
>
> RESPONSE: *See* IDOC000206-247, produced herewith. A request has been submitted for any additional documentation responsive to this Request, and to the extent such documents exist, they will be produced as received.
>
> **7. All Documents, including, but not limited to, policies, handbooks, guidelines, training materials, or rules concerning accommodation of religious beliefs of inmates, including, but not limited to, policies, handbooks, guidelines, training materials, or rules concerning Illinois Administrative Code, Title 20, Section 425.**

> RESPONSE: *See* IDOC000180-000245, produced herewith. A request has been submitted for any additional documentation responsive to this Request, and to the extent such documents exist, they will be produced as received.

*See* Def. Dethrow's Resp. to Pl.'s Second RFPs., attached as **Exhibit 3** to the Rolfes Decl.; Def. Pfister's Resp. to Pl.'s Second RFPs., attached as **Exhibit 4** to the Rolfes Decl.

9. The documents that IDOC produced on behalf of Defendants in response to Mr. Saleh's second set of RFPs did not include any documents related to the incidents alleged in the Complaint, the determination of Mr. Saleh's grievance related to those incidents, or policies associated with how IDOC personnel should address an inmate's request for an accommodation to go to the commissary on an alternative line because of a desire to attend a religiously required service. *See* Rolfes Decl. at ¶ 11, Ex. A.

10. Mr. Saleh also served a second set of interrogatories seeking information about who had knowledge of the matters alleged in Mr. Saleh's Complaint, and policies regarding religious accommodations and inmate trips to the commissary. Of significance here, on July 25, 2019, Defendants, in responses provided by the Illinois Attorney General and signed off on by an Assistant Attorney General Amanda Kozar, responded to three of those interrogatories primarily by identifying documents, as follows:

> **2. Identify each person who has knowledge of, information regarding, or custody of documents concerning facts relating to, concerning, or in any manner bearing upon the averments in the Complaint in this action, and describe the particular substance of each person's knowledge.**
>
> [Dethrow] RESPONSE: Defendant objects to Interrogatory No. 2 as vague and overbroad. Subject to, and without waiving those objections, Defendant responds that he is unaware of who might have knowledge of the allegations set forth in Plaintiff's Complaint; however, Defendant directs Plaintiff to IDOC000001-0000247, previously produced. Defendant answers further that to his knowledge, the only entity with custody of documents related to Plaintiff's allegations is the Keeper of Records at Stateville Correctional Center.

> [Pfister] RESPONSE: Defendant objects to Interrogatory No. 2 as vague and overbroad. Subject to, and without waiving those objections, Defendant responds that aside from co-Defendant Joseph Dethrow, he is unaware of who might have knowledge of the allegations set forth in Plaintiff's Complaint. Defendant answers further that to his knowledge, the only entity with custody of documents related to Plaintiff's allegations is the Keeper of Records at Stateville Correctional Center, and directs Plaintiff to IDOC0000001-000247, previously produced.
>
> …
>
> **4. Identify all IDOC policies, handbooks, guidelines, training materials, or rules concerning accommodation of religious beliefs of inmates, including, but not limited to policies, handbooks, guidelines, training materials, or rules concerning Illinois Administrative Code, Title 20, Section 425.**
>
> [Dethrow and Pfister] RESPONSE: See IDOC000180-000247, previously produced.
>
> …
>
> **5. Identify all IDOC policies, handbooks, guidelines, training materials, or rules concerning the scheduling and coordination of inmate trips to the commissary, including, but not limited to, all IDOC policies, handbooks, guidelines, training materials, or rules concerning the circumstances under which an inmate may request and attend a trip to the commissary with a different group or "line" of inmates.**
>
> [Dethrow and Pfister] RESPONSE: See IDOC000180-000247, previously produced.

*See* Def. Dethrow's Resp. to Pl.'s Second and Third Set of Interrogs., attached as **Exhibit 5** to the Rolfes Decl.; Def. Pfister's Resp. to Pl.'s Second and Third Set of Interrogs., attached as **Exhibit 6** to the Rolfes Decl.

11. Thereafter, Mr. Saleh served a Third Set of RFPs seeking all documents related to the investigation of, response to and determination regarding Mr. Saleh's grievance, as well as policies and procedures related to prisoner requests to go to the commissary on a line other than his cell block line. Mr. Saleh additionally sought evidence related to when inmates went to the commissary on the dates in question to address Defendants' claims regarding Mr. Saleh's ability to both go to the commissary without missing his religious service. Defendants, via responses

provided by the Illinois Attorney General and signed by Assistant Attorney General Maebetty Kirby, responded to those RFPs as follows:

> **1. All DOCUMENTS RELATED TO or CONCERNING the IDOC's investigation of, response to and determination regarding Mr. Saleh's September 13, 2017 grievance including, without limitation, documents reviewed; oral or written communications related to, and documents generated as part of, the investigation, response and determination; and the actions of all IDOC personnel in considering and reaching a determination about the grievance**.
>
> RESPONSE: Defendants respond that all documents maintained by an IDOC correctional facility in the regular course of business regarding an inmate's grievances, and any responses thereto, are stored in an inmate's master file. Defendants further respond that all documents maintained by the Administrative Review Board in the regular course of business regarding an inmate's grievances, and any responses thereto, are stored in an inmate's file with the Administrative Review Board. Defendants further respond that all documents regarding Plaintiff's September 13, 2017 grievance stored in Plaintiff's master file or in Plaintiff's file with the Administrative Review Board have already been produced to Plaintiff.
>
> **2. All DOCUMENTS RELATED TO or CONCERNING identification of the times prisoners were taken to the commissary on September [8], 2017 and September 11, 2017, whether any prisoners on those dates were permitted to go to the commissary on lines other than their cell block lines, and if so, for what reasons were prisoners permitted to go to the commissary on a line other than their cell block line on September [8], 2017 and September 11, 2017**.
>
> RESPONSE: … Defendants respond that schedules identifying which Houses and Galleries are taken to commissary on which days in any given month are not maintained in the regular course of business at Stateville Correctional Center. Defendants further respond that such schedules are sent via email and modified via email. Defendants further respond that IDOC has been unable to retrieve any emails regarding the commissary schedule that was in effect in September 2017 because, to the extent that any such emails exist, they have been archived. Defendants object to Request No. 2 to the extent that it requires Defendants to perform an ESI search of archived emails on the grounds that an ESI search is not proportional to the needs of this litigation and on the grounds that Plaintiff has not proposed custodians, search terms, or other necessary search parameters.
>
> Defendants further respond that the commissary schedule that was in effect in February 2018 has been previously produced as IDOC000182. Defendants further respond that, if an inmate makes a purchase at commissary, the inmate's receipt is stored in the regular course of business. Defendants further respond that they are not aware of any other method by which IDOC logs or tracks what times inmates

attend commissary, other than through retention of inmate commissary receipts and by referencing the commissary schedules that are set via email.

**3. All DOCUMENTS RELATED TO or CONCERNING the IDOC's policies or procedures related to prisoner requests to go to the commissary on a line other than his cell block line.**

RESPONSE: Defendants object to Request No. 3 on the grounds that it is vague, overly broad, and unduly burdensome. Subject to and without waiving the foregoing objections, Defendants respond that there are no written policies setting forth the procedures related to inmates' requests to go to the commissary on a line other than his cell block line.

*See* Defs.' Resps. to Pl.'s Third Set of RFPs, attached as **Exhibit 7** to the Rolfes Decl.

12. Of special note here, in the above-quoted response, the Defendants, through their counsel, Assistant Attorney General Kirby, indicated that "all documents regarding Plaintiff's September 13, 2017 grievance stored in Plaintiff's master file or in Plaintiff's file with the Administrative Review Board have already been produced to Plaintiff." Up to that point, however, the IDOC's production of documents on behalf of Defendants did not include any documents related to Saleh's grievance or the matters alleged in his Complaint . *See* Rolfes Decl. at ¶ 15, Ex. A.

13. Mr. Saleh had maintained copies of the grievances he had submitted related to the events alleged in the Complaint, as well as other correspondence he had sent to, and received from, Defendant Pfister. *See* Rolfes Decl. at ¶ 16, Ex. A. As Defendants had not produced any of those documents after repeated requests for those documents, Mr. Saleh's counsel drew a logical conclusion that either the IDOC had not made a good faith search for responsive documents or had destroyed documents that previously existed. When that deficiency was brought to Ms. Kirby's attention, the IDOC finally produced Mr. Saleh's September 13, 2017 Grievance, as well as the October 13, 2017 Grievance Officer Report, but not other documents related to the incident such

as the letter Defendant Pfister sent to Mr. Saleh about the incident. *See* Rolfes Decl. at ¶ 16, Ex. A.

14. Assuming that IDOC's failure to produce this grievance and the grievance report was "due to human error," Ms. Kirby then proceeded to blame Mr. Saleh's counsel for IDOC's failure to produce documents in response to any of the three RFPs that would have called for their production. *See* E-mail Correspondence between Mr. Rolfes and Ms. Kirby, attached to the Rolfes Decl. as **Exhibit 8**, at p. 1. She also asserted that Defendant Pfister's letter to Mr. Saleh, which clearly referred to Mr. Saleh's claim he had been discriminated against when denied the accommodation of an alternative commissary line, was "wholly unrelated to 'IDOC's investigation of, response to, and determination regarding Mr. Saleh's September 13, 2017 grievance.'" *Id.* at p. 2. Ms. Kirby then indicated that IDOC would not search beyond Mr. Saleh's master file for responsive documents, such as for example, the warden's office where apparently copies of correspondence such as Defendant Pfister's letter to Mr. Saleh are maintained. *Id.* When asked to have a call to discuss this response, Ms. Kirby refused. *Id.* at p. 1.

15. Given the IDOC's deficient responses to discovery, its claim that no written policies or procedures existed with regard to the topics identified in Mr. Saleh's written discovery, and its inability to identify documents related to when inmates went to the commissary on September 8 and 11, 2017, as well as Defendants' inability to identify anyone with knowledge of the events alleged in the Amended Complaint or the subsequent determination of Mr. Saleh's grievance related to that incident, Mr. Saleh served a notice for the IDOC to identify a witness under FRCP 30(b)(6) to testify on the following topics:

> 1. IDOC's investigation of, response to and determination regarding Mr. Saleh's September 13, 2017 grievance including, without limitation, identification of: persons interviewed; documents reviewed; oral or written communications related to, and documents generated as part of, the investigation, response and

determination; and the actions of all IDOC personnel in considering and reaching a determination about the grievance.

2. IDOC's search for documents responsive to Mr. Saleh's requests for production, including without limitation, facts identified to support the assertion of an objection to any such request as "unduly burdensome."

5. Identification of the times prisoners were taken to the commissary on September 8, 2017 and September 11, 2017, whether any prisoners on those dates were permitted to go to the commissary on lines other than their cell block lines, and if so, for what reasons were prisoners permitted to go to the commissary on a line other than their cell block line on September 8, 2017 and September 11, 2017.

6. IDOC's policies or procedures related to prisoner requests to go to the commissary on a line other than his cell block line.

*See* Pl.'s Am. Notice of 30(b)(6) Deposition to IDOC, attached as **Exhibit 9** to Rolfes Decl.

16. After IDOC objected to producing a witness on any topic, counsel reached a compromise on several subjects. Of relevance here, the parties agreed that if IDOC would undertake a survey of documentation related to when inmates went to the commissary on the relevant dates, Mr. Saleh would drop his request for further discovery on that topic. Further, the parties agreed that if IDOC could provide a sufficient response via interrogatory response concerning policies or procedures related to prisoner requests to go to the commissary on a line other than his cell block line, it would no longer need to produce a witness on that subject. After several weeks, IDOC has failed to conduct the survey and the parties have come to an impasse as to the language of IDOC's proposed interrogatory response. *See* Rolfes Decl. at ¶¶ 19-21, Ex. A.

17. Further, during depositions taken in this case, Defendant Pfister stated that he was never asked by counsel to identify documents responsive to the various document requests directed to him. *See* Excerpts of Deposition of Defendant Pfister, attached as **Exhibit 10** to the Rolfes Decl., at 17:18-23, 18:7-11. He also indicated that while the signature shown on the grievance report and his letter to Mr. Saleh is identified as his signature, he in fact did not sign those documents. Instead,

he had a "designee" – who he could not identify – sign for him (and apparently make all determinations related to such documents for him). *See id.* at 71:9-22. Additionally, IDOC employee Anna McBee, who also signed Mr. Saleh's grievance report testified to the existence of other documents related to the grievance process IDOC has failed to produce, such as an excel spreadsheet containing the information regarding Mr. Saleh's grievance. *See* Rolfes Decl. at ¶ 23, Ex. A.

19. On February 21, 2020, Defendant and IDOC filed a Motion for Protective Order (ECF No. 82), seeking to strike deposition subpoenas to Anna McBee, Ada Johnson and the IDOC pursuant to FRCP 30(b)(6). Judge Coleman denied the motion as to McBee and Johnson, but struck the motion as to the IDOC 30(b)(6) motion based on the parties' statement they were attempting to work on a compromise as to that deposition. At the hearing on the motion, Judge Coleman indicated that should attempts to compromise fail, issues related to the 30(b)(6) should be brought to the magistrate assigned to the case.. Judge Coleman also ordered the IDOC to disclose the name of the "designee" who signed Defendant Pfister's name to the grievance report. *See* Rolfes Decl. at ¶ 24, Ex. A.

19. The parties have reached an impasse on the IDOC 30(b)(6) deposition. With regard to Topic 1, given Defendants failure to fully and accurately provide in written responses to discovery requests, an explanation as to what was done with regard to the investigation of Mr. Saleh's grievance, or to produce all records related to that grievance, Mr. Saleh requires the IDOC to undertake the investigation required of a 30(b)(6) witness and appear to testify as to what investigation was done, who was involved and how the decision on that grievance was reached.

20. Given the clear problems with IDOC's efforts to produce documents, and the apparently narrow focus IDOC has given to Mr. Saleh's discovery requests, a deposition is need

to determine how IDOC conducted its document search, assisted Defendants' response to interrogatories and interpreted the discovery requests, all as set forth in Topic 2 to the 30(b)(6) notice. While the IDOC's counsel has suggested this should be done through counsel, those efforts have failed. Counsel apparently received inaccurate information as to why documents were not produced, or alternatively did not seek such information before making representations in discovery responses. Counsel further has not provided any evidence of why responding to various discovery requests would be unduly burdensome, made narrow interpretations of the requests and refuses to have meet and confer calls to discuss the scope of discovery Mr. Saleh has sought.

21. As to the times inmates went to the commissary on September 8 and 11, 2017 as set forth in Topic 5, Mr. Saleh and Defendants worked out a compromise of taking a survey of documents several weeks ago. Defendants' counsel, however, has not committed to actually doing the survey or given a date certain on when it will be done. Given IDOC's refusal to produce documents related to the commissary lines, and in the absence of timely performance of the suggested compromise, Mr. Saleh needs an IDOC representative to undertake the investigation necessary and testify as to when inmates went to the commissary on September 8 and 11, 2017. Mr. Saleh also needs a witness to appear to testify as to the procedures and policies associated with allowing inmates to go commissary on an alternative line when there is a conflict with religious services as set forth in Topic 6. In discovery requests, IDOC has stated the policies are not written, although at one time Defendants referred to non-responsive documents as reflecting such policies in response to written discovery requests. *See* Def. Dethrow's Resp. to Pl.'s Second and Third Set of Interrogs., Ex. 5 to Rolfes Decl., Resp. to Interrog. No. 5; Def. Pfister's Resp. to Pl.'s Second and Third Set of Interrogs., Ex. 6 to Rolfes Decl., Resp. to Interrog. No. 5. While the parties attempted to resolve this topic through a response to an interrogatory, Defendants' counsel sought

to limit the Defendants' response in a manner that Mr. Saleh's counsel could not agree to. *See* E-mail Correspondence, Ex. 8 to Rolfes Decl., at pp. 2, 6.

22. Mr. Saleh also respectfully asks that the Court order Defendants to provide a full production of documents related to the incident that is alleged in the Amended Complaint, even if not found in Mr. Saleh's master file. Here, there has been testimony regarding responsive documents not found in the master file. *See* Rolfes Decl. at ¶ 23. Defendants and IDOC have an obligation to look in all places they believe in good faith such documents exist. As Ms. Kirby conceded, Defendants have not done this, and in fact, refuse to do so.

23. Lastly, although ordered by Judge Coleman to do so, IDOC has not identified Defendant Pfister's designee nor provided a date certain by which it will do so. Mr. Saleh therefore respectfully requests the IDOC to identify the designee by a date certain and provide sufficient time before the discovery cut off in this matter for Mr. Saleh to take that person's deposition.

24. Prior to filing this motion, Mr. Saleh's counsel has either met and conferred, or attempted to meet and confer, with Defendants' counsel in a good faith effort to obtain the discovery referred to in this motion.

WHEREFORE, Mr. Saleh respectfully requests that the Court enter an order compelling:

- an IDOC 30(b)(6) deposition on Topic 1, 2, 5, and 6 of Mr. Saleh's 30(b)(6) notice;
- the Defendants' production of all documents, wherever located, that concern or relate to the incident alleged in Mr. Saleh's Amended Complaint, including Mr. Saleh's grievance, the incident that is the subject of that grievance, any investigation done of that grievance or the incident described in that grievance,

and any determinations made with regard to the grievance or the incident described in that grievance; and

- IDOC's identification of Defendant Pfister's "designee" by a date certain.

Dated: March 11, 2020                                                                 Respectfully submitted,

By:  */s/ James A. Rolfes*

James A. Rolfes (ARDC No. 6200271)
Caitlin O. Young (ARDC No. 6321768)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
T: (312) 207-1000
F: (312) 207-6400
jrolfes@reedsmith.com
coyoung@reedsmith.com

*Counsel for Plaintiff Abdel Jaber Saleh*

**CERTIFICATE OF SERVICE**

    I, James A. Rolfes, one of Plaintiff's attorneys, certify that on March 11, 2020, I electronically filed the foregoing document with the Clerk of the United States District Court, Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                              */s/ James A. Rolfes*