UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABDEL JABER SALEH (#R57679), | ) |
| Plaintiff, | ) Case No. 18 C 1812 |
| v. | ) Judge Sharon Johnson Coleman |
| RANDY PFISTER, Warden, Stateville Correctional Center,[1] JOEY DETHROW, former Stateville Correctional Sergeant, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Abdel Jaber Saleh, by counsel, brings this lawsuit against officials at Stateville Correctional Center ("Stateville") alleging violations of the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*. Before the Court is defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants defendants' motion without prejudice. The Court also grants Saleh leave to file a second amended complaint keeping in mind counsel's Rule 11 obligations.

**Background**

The Court construes the following facts from the amended complaint as true and in Saleh's favor. Saleh, a practicing Muslim, was incarcerated at Stateville during the relevant time period. Saleh alleges that on September 8, 2017, defendant Joey Dethrow, a Stateville correctional sergeant,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Randy Pfister, the current warden of Stateville Correctional Center, is substituted for Sherwin Kia Miles, the former acting warden at Stateville, as to Saleh's official capacity claims. Miles is no longer a defendant to this lawsuit because Saleh only sued her in her official capacity.

gave him the choice of either going to the Friday afternoon Islamic prayer service called Jumu'ah or to the commissary to complete his shopping – but not both. Saleh chose to go to the Jumu'ah services. On September 11, Saleh asked Dethrow if he could go to the commissary because he missed the September 8 opportunity to do so. Dethrow refused this request. Correctional officers did not allow Saleh to go to the commissary again until October 3. The parties do not dispute that Saleh has exhausted his administrative remedies.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**[2]

*First Amendment Claim*

In Count I, Saleh alleges that defendants violated the Free Exercise Clause of the First

---

[2] Saleh's argument that the present motion to dismiss is untimely because defendants answered the original complaint is misplaced. *See Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) ("When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward" and "[b]ecause a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses.") (citation omitted).

Amendment. "The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v. C.I.R.,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). "A substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation omitted). This "burden must be more than a mere inconvenience to rise to the level of a constitutional injury; it must place 'significant pressure'" on the plaintiff "to 'forego religious precepts' or to engage in 'religious conduct.'" *Vision Church v. Village of Long Grove*, 468 F.3d 975, 999 (7th Cir. 2006) (citation omitted).

Here, Saleh chose to go to Jumu'ah prayer service instead of the commissary. That Dethrow and others prohibited Saleh from going to the commissary for approximately three to four weeks to buy "essential hygiene products" such as soap, along with pens, paper, and snacks does not amount to a substantial burden under the Free Exercise Clause. This is because Saleh's inability to buy these items at the commissary did not affect his religious practices. If, for example, Saleh had alleged that he was denied access to the commissary to buy halal meat or other foods required by his religion, he would have stated a plausible claim. *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019). Saleh has not alleged that the inability to purchase soap, pens, paper, or snacks modified his behavior in relation to his religion, therefore, his allegations do not state a plausible claim for relief.

Assuming, arguendo, that Saleh had sufficiently stated his Free Exercise claim, he has failed to set forth sufficient factual details of Warden Pfister's personal involvement in the alleged constitutional deprivation, which happens when the constitutional deprivation occurs at the prison official's direction or with his knowledge or consent. *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Saleh's allegations that Warden Pfister was aware of the situation through the prison grievance process are insufficient to establish personal involvement, especially because Warden

3

Pfister concurred with the grievance officer's conclusion that Saleh's grievance was unsubstantiated. *See Williams v. Raemisch*, 545 Fed. Appx. 525, 529 (7th Cir. 2013); *see also George v. Smith,* 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

Turning to Saleh's official capacity claim against Warden Pfister, litigants cannot bring claims for damages against states or state agencies based on the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *see, e.g., Fritz v. Evers,* 907 F.3d 531, 533 (7th Cir. 2018). Accordingly, Saleh's arguments based on Warden Pfister permitting certain prison policies and customs fails in this respect.

As to any claim for prospective injunctive relief based on these alleged policies and customs, Saleh has failed to set forth adequate facts to state a plausible claim that Warden Pfister is liable in his official capacity, especially because Saleh sets forth only one incident where he had to decide between going to Jumu'ah or the commissary. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage [] a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom."); *see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) ("there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events."). The Court therefore grants defendants' motion to dismiss Saleh's Free Exercise claim as alleged in Count I.

*Equal Protection Claim*

In Count II, Saleh brings an Equal Protection claim asserting that defendants intentionally discriminated against him based on his religion. "The equal protection clause of the Fourteenth

4

Amendment protects individuals against intentional, arbitrary discrimination by government officials." *Lauderdale v. Illinois Dep't of Human Serv.*, 876 F.3d 904, 909–10 (7th Cir. 2017) (citation omitted). The test for religious discrimination is the same whether analyzed under the Fourteenth Amendment's Equal Protection Clause or the First Amendment's Establishment Clause. *See Board of Ed. of Kiryas Joel Village Sch. Dist. v. Grumet,* 512 U.S. 687, 715, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (O'Connor, J., concurring). In general, the Equal Protection Clause and the Establishment Clause prohibit prison officials from treating members of some religions more favorably than others without a secular purpose. *See Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) ("Establishment Clause may be violated even without a substantial burden on religious practice if the government favors one religion over another (or religion over nonreligion) without a legitimate secular reason for doing so."); *see also Al-Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir. 1991) ("rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations.").

In support of his Equal Protection claim, Saleh alleges that defendant Dethrow allowed Christian inmates to attend rescheduled commissary trips to accommodate their religious services and classes in contrast to Dethrow's refusal to accommodate his religious needs in September 2017. Because Saleh must eventually show that the "defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class," *Word v. City of Chicago*, 946 F.3d 391, 396 (7th Cir. 2020), his allegation of one isolated event that adversely affected him does not plausibly suggest an Equal Protection violation. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) ("mere inconsistency in prison management [] may not in itself constitute a cognizable equal protection claim.") (citation omitted). As such, Saleh's conclusory allegations base on one incident when Dethrow denied him access to the commissary do not plausibly suggest that defendants intentionally discriminated against him based on his religion. *See Iqbal*, 556 U.S. at 679

5

("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court thus grants defendants' motion to dismiss Count II of the amended complaint.

*RLUIPA Claim*

In Count III, Saleh asserts a claim under RLUIPA based on Dethrow forcing him to make a choice between going to Jumu'ah or the commissary on September 8, 2017.[3] RLUIPA states that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc–1(a). Although RLUIPA does not define "substantial burden," the Supreme Court has held that a substantial burden exists when an inmate is required to "engage in conduct that seriously violates [his] religious beliefs." *Holt v. Hobbs,* 574 U.S. 352, 135 S. Ct. 853, 862, 190 L.Ed.2d 747 (2015) (citation omitted).

Saleh's allegations fail to adequately allege a RLUIPA claim under this standard. He has not alleged that the one-time restriction where he was forced to choose between the commissary and Jumu'ah prayer services seriously violated or contradicted his religious beliefs because this choice did not restrict Saleh's ability from going to Jumu'ah. And, Saleh's inability to go to the commissary to purchase "essential hygiene products" such as soap, along with pens, paper, and snacks is not linked to his religious practices. The Court recognizes that RLUIPA confers greater religious rights than under the Free Exercise Clause, *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012), yet Saleh has failed to allege sufficient facts to nudge his RLUIPA allegations across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570; *Taha v. Int'l Bhd. of Teamsters, Local 781,* 947 F.3d 464, 472 (7th Cir. 2020). The Court thus grants defendants' motion to dismiss Count III.

---

[3] The parties agree that Saleh's RLUIPA claim is only for injunctive relief. *See Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1004 (7th Cir. 2019).

**Conclusion**

For the foregoing reasons, this Court grants defendants' motion to dismiss without prejudice [63]. The Court grants plaintiff leave to file a second amended complaint keeping in mind counsel's Rule 11 obligations. Plaintiff's second amended complaint is due on or before June 26, 2020.

IT IS SO ORDERED.

Date: 5/6/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge