**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ABDEL JABER SALEH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 18 C 1812** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **RANDY PFISTER, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff has filed a Motion to Compel Responses to Requests for Production and to Compel a Fed.R.Civ.P. 30(b)(6) deposition from the defendant, IDOC. [Dkt. #88]. The briefing is now complete. [Dkt. #115]. For the following reasons, the Motion is granted.

This case concerns a Muslim inmate at Stateville Correctional Center and a conflict between the schedule for a trip to the commissary and Friday Jumu'ah prayers. Plaintiff claimed he was forced to choose between prayers and the commissary. He chose prayers and was not given a make-up time to accommodate his choice. As a result, he says, he could not do his scheduled shopping in September 2017. He filed suit, alleging his First and Fourteenth Amendment rights were violated. The District Court appointed an attorney for the plaintiff in April 2019 [Dkt. #44], and the defendant filed a Motion to Dismiss. [Dkt. # 63]. Discovery commenced about seven months ago, and, like so many other cases, it has been less than harmonious, proving again, unfortunately, the wisdom of Judge Posner's lament that protracted discovery is the bane of modern litigation. *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000). *See also Yeager v. Innovus Pharm., Inc.*, 2019 WL 447743, at *3 n.3 (N.D. Ill. 2019).

As often occurs in these sorts of cases, IDOC was late with production of documents and was ordered to complete its obligations by March 31, 2019. [Dkt. #39]. The IDOC did not do much in response – as we shall see – and, as a result, the plaintiff, then acting *pro se*, filed a motion for sanctions contending that IDOC had not complied with the court-ordered deadline. [Dkt. # 42]. The motion was denied, but counsel was appointed. [Dkt. ##44, 58]. That appointment did not unfortunately cure the problem. IDOC still hasn't met its obligations to participate in discovery in good faith, hiding behind unreasonably narrow interpretations of discovery requests and the change in attorneys assigned to this matter from the Attorney General's office.

First things first. Time and time again, attorneys are warned that boilerplate objections are unacceptable. They are tantamount to not making any objection at all. *See Steed v. EverHome Mortgage Co.*, 308 F.Appx 364, 371 (11th Cir 2009); *Gevas v. Dunlop*, 2020 WL 814875, at *3 (N.D. Ill. 2020); *Williams v. Biomet, Inc.*, 2019 WL 6117594, at *2 (N.D. Ind. 2019); *Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *11 (N.D. Ill. 2019); *Gunn v. Stevens Security & Training Servs. , Inc.*, 2018 WL 1737518, at *2 (N.D. Ill. 2018); *Kelley v. Board of Ed.*, 2012 WL 1108135, *2-3 (N.D.Ill. 2012)(collecting cases). Nonetheless, IDOC's responses are replete with them. An example of IDOC's non-responsiveness came early on when plaintiff, then acting *pro se*, asked when IDOC became aware of the conflict between the commissary schedule and Jumu'ah. IDOC said, without explanation, that the interrogatory was "overly broad and vague." But the conflict is what this case is about. The request was laser-focused, perhaps more focused than many requests from seasoned attorneys. The response, which was indicative of others, was not. The boilerplate answer constituted a waiver of whatever objection, if any, IDOC might properly have made. Boilerplate objections, as we have shown, are ineffectual in all contexts.

2

Remarkably, despite more than one request, IDOC failed to produce any documents regarding plaintiff's grievance or the matters alleged in his complaint *through February 2020*. It was not until March 4, 2020, that the attorney now assigned to the case claimed it was all an oversight and blamed it on the part of the previous attorney assigned to the case and/or to human error. [Dkt. #88-1, Page 47/62]. Apart from the fact that whatever objections may properly have been raised by the previous attorney, none were, and thus they are waived. Still, this extremely late production included just *four pages* of documents. It seems inherently incredible to conclude that this was a full, good faith production. And, not surprisingly and understandably, plaintiff's counsel felt it was clear that the production was not complete: there apparently were still documents missing, for example, plaintiff's letter to the governor. Plaintiff's counsel speculated that defendant had either not conducted a good faith search or had destroyed documents. [Dkt. # 88-1, Page 46/62].

Once the charge of spoliation was made, things, to quote Ron Burgundy, "really escalated quickly." IDOC's counsel wrote back that hyperbole was not productive, the matter had been discussed thoroughly, and the documents stored in plaintiff's file were all produced. She went on to say any letters plaintiff might have written to outside offices, like the governor's office, would have been in the file. [Dkt. #88-1, Page 45/62]. But, she also explained that letters to the warden were handled through a different process that grievances and, so such documents would have nothing to do with the grievance and wouldn't have been produced. [Dkt. #88-1, Page 45/62]. That's not reasonable; it's far too fine a distinction. She continued by complaining that it was a waste of time to ask for documents plaintiff already had copies of himself. [Dkt. #88-1. Page 88-1, Page 45/62]. But it is not a waste of time. It is not a matter of whether the plaintiff has a document already, it is a matter of the plaintiff having a document, thereby knowing a copy ought to have been in the file

3

and produced. That ought to have been obvious.

In response, plaintiff's counsel made the same points regarding IDOC's production. He indicated he did not appreciate defense counsel's attitude. Things went downhill quickly. He said defense counsel could understand his position if she "truly put [her] imagination to work." He closed by stating they remained open to working together and requested a "meet and confer" on their differences, [Dkt. # 88-1, Page 44/62], as required by Local Rule 37.2. Defense counsel, however, refused to meet and confer. She told plaintiff's counsel how to spell her first name – he had spelled it incorrectly in every email he sent her. She explained that she hadn't been the attorney on the case when production was made and that she could only assume any faulty production was due to human error. Defense counsel maintained that only grievance documents – as opposed to documents regarding the grievance or relevant to the allegations – were responsive to plaintiff's requests and had already been produced. That would be the four pages of documents mentioned early on in the email exchange.

In a remarkable assertion, she explained that, for example, letters plaintiff wrote to the warden about his grievance – about the conflict between prayers and commissary time – would only be responsive and produced if they had been attached to his grievance. She said if plaintiff's counsel wanted to know if anyone knew of such letters or had them, he would have to issue another request specifically asking for them. She said he could not file a motion to compel, because he already had received the four pages of plaintiff's grievance. She could not yet produce a name of the warden's designee for a deposition; she was still conferring with IDOC. And, finally, she did not agree to plaintiff's statement as to what IDOC's commissary time accommodation policy was; she said it was what she had sent before. [Dkt. #88-1, Page 41-43/62]. There was no policy. [Dkt. # 88, at 8-9]. The

4

conduct of defendant's lawyer is troubling even in these overly and needlessly contentious times and it served no legitimate purpose or helped to achieve any worthy end.

To make matters worse, when the plaintiff deposed defendant, Randy Pfister, the Warden of Stateville, he said no one ever even asked him if he could identify any documents responsive to plaintiff's requests. (Pfister Dep., at 17-18). He said he had a designee handle the processing of plaintiff's grievances. The signature on the grievance, although purporting to be his, was not his, and he claimed not to know whose it was. (Pfister Dep., at 71-72). A deposition of an IDOC employee also indicated that there were documents IDOC failed to produce, but that was fairly obvious anyway.

That is where things stand. Unfortunately, email exchanges between counsel are often an otiose endeavor, devolving into personal attacks. Local Rule 37.2 requires more than impersonal letters and emails. Under the Rule, conferring must ultimately be done in person or on the phone; emails and letters will not suffice. *See Ruebe v. Partnerre Ireland Ins.*, 2019 WL 7562661, at *1 (N.D. Ill. 2019). *See also BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 343 F. Supp. 3d 742, 744 (N.D. Ill. 2018); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2018 WL 505089, at *2 (N.D. Ill. 2018); *Geraci v. Andrews*, 2017 WL 1822290, at *1 (N.D. Ill. 2017); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("The command in the rule could not be more explicit. Emails and letters are not enough under Rule 37.2."). The reason for the rule is obvious. Paper is patient:

> [a]nyone can write a letter. But that does not mean that the recipient will fairly consider the letter before dashing off one of his own that does little more than persist in setting forth his partisan point of view. The letters and the emails that one all too often see do little more than articulate the parties' polar positions with the clash of pretending absolutes left unresolved. Local Rule 37.2 is based on the teaching of long

5

experience that face-to-face discussions are far more likely to result in compromise and agreement than is an exchange of letters that are all too easy to brush aside.

*Slaven v. Great Am. Ins. Co.*, 2014 WL 4470723, at *2 (N.D. Ill. 2014).

Just as importantly, though, the Rule requires *good faith* negotiations. *See NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc*., 2018 WL 3637356, at *16 n.9 (N.D. Ill. 2018). The phrase, "good faith," common throughout the law, is not a talisman, empty and meaningless. *Cf. Cent. Illinois Light Co. v. Consolidation Coal Co.*, 349 F.3d 488, 492 (7th Cir. 2003). An ultimatum on one side, met with steadfast defiance on the other, is generally not a good faith discussion. *See, generally, W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 958–59 (N.D. Ill. 2018)("Chatting for a bit about a dispute and maintaining an untenable position at worst or a tenuous position at best, is not engaging in a good faith meet and confer."); *Infowhyse GmbH v. Fleetwood Grp*., 2016 WL 4063168, at *1-2 (N.D. Ill. 2016)("A single phone call in three months regarding a dispute that has engendered nearly 500 pages of briefs and exhibits doesn't come close to sufficing."). Here, counsel for IDOC simply took an unreasonable and far too narrow view of what was responsive and refused to budge. No one even asked the warden about documents.

Accordingly, the plaintiff's motion to compel [Dkt. #88] is granted. IDOC is ordered to: 1) produce a witness for an IDOC 30(b)(6) deposition; 2) produce all documents, wherever located, that relate to the incidents leading to plaintiff's grievance, any investigation done regarding the grievance, and any determinations made regarding that grievance; and 3) identify within seven days Defendant Pfister's so-called designee.

**ENTERED:** _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 7/30/20