# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABDEL JABER SALEH (#R57679), ) | |
| ) | |
| Plaintiff, ) | Case No. 18 C 1812 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| RANDY PFISTER,[1] Warden, Stateville ) | |
| Correctional Center, JOEY DETHROW, ) | |
| former Stateville Correctional Sergeant, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Abdel Jaber Saleh brings the present second amended complaint against officials at Stateville Correctional Center ("Stateville") alleging violations of the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.* On May 6, 2020, the Court granted defendants' first Federal Rule of Civil Procedure 12(b)(6) motion to dismiss without prejudice while also granted Saleh leave to file a second amended complaint. Before the Court is defendants' Rule 12(b)(6) motion to dismiss the second amended complaint. For the following reasons, the Court grants in part and denies in part defendants' motion.

**Background**

Saleh, a professing Muslim, has been incarcerated at Stateville during the relevant time period. In his second amended complaint, Saleh alleges that on September 8, 2017, defendant Joey Dethrow, a Stateville correctional sergeant, gave him the choice of either going to the Friday afternoon Islamic Jumu'ah prayer services or to the commissary to complete his shopping – but not

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), David Gomez, the current warden of Stateville Correctional Center, is substituted for Randy Pfister, the former warden at Stateville, as to Saleh's official capacity claims.

both. Saleh chose to go to the Jumu'ah services. Saleh alleges that as the sergeant in charge of his cellblock on September 8, 2017, Dethrow had the authority to determine whether Saleh would be able to go in the first group to the commissary. On September 11, Saleh asked Dethrow if he could go to the commissary because he missed the September 8 opportunity to do so. Dethrow refused this request. Correctional officers did not allow Saleh to go to the commissary until October 3.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

*First Amendment Claim*

In Count I, Saleh alleges that defendants violated the Free Exercise Clause of the First Amendment. The Free Exercise Clause, "'protects religious observers against unequal treatment' and against 'laws that impose special disabilities on the basis of religious status.'" *Espinoza v. Montana Dept. of Revenue,* 140 S.Ct. 2246, 2254 (2020) (citation omitted). "The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v.*

2

*C.I.R.,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). "A substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation omitted).

In his second amended complaint, Saleh alleges that due to the choice Dethrow gave him between attending Jumu'ah services or going to the commissary, Dethrow prohibited him from buying halal foods and hygiene products necessary to practice his religion. Under these allegations, Saleh has alleged sufficient factual details making his claim plausible under controlling law. In *Thompson*, for example, the Seventh Circuit concluded that it was a substantial burden on a Muslim prisoner's religion when guards withheld his Ramadan meals for two days. *Id.* at 380. Similarly, in the context of a RLUIPA claim, the Seventh Circuit has held "[w]hen the state forces a prisoner to choose between adequate nutrition and religious practice, it is imposing a substantial burden on his religious practice." *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019); *see also Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990) (same, applying free exercise inquiry). In addition, the Supreme Court has held that a Muslim prisoner established a prison grooming policy substantially burdened his exercise of religion. *Holt v. Hobbs,* 574 U.S. 352, 361, 135 S. Ct. 853, 862, 190 L.Ed.2d 747 (2015). With this precedent in mind and viewing the facts in Saleh's favor, he has plausibly alleged that his religious practice of eating halal foods, along with his religious grooming needs, were substantially burdened in violation of the First Amendment's Free Exercise Clause.[2]

Next, Saleh contends that defendant Pfister, as warden, was personally involved in the violation of his Free Exercise rights because he turned a blind eye to grievances about Islamic practices at Stateville. Whether Pfister ignored general grievances about Islamic practices does not

---

[2] Because it is defendants' burden to show that any such restrictions on Saleh's religious practice are justified by legitimate penological interests, this issue is best left for summary judgment. *See Singer v. Raemisch*, 593 F.3d 529, 536-37 (7th Cir. 2010); *King v. Federal Bureau of Prisons*, 415 F.3d 634, 639 (7th Cir. 2005).

plausibly suggest that Pfister was personally involved in the alleged constitutional violation concerning the restrictions placed on Saleh's ability to get halal food and hygiene products in September 2017. Specifically, these allegations do not raise a reasonable inference that Saleh's specific constitutional deprivation occurred due to Pfister's direction or with his knowledge and consent. *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019).

Saleh further contends that Pfister was personally involved in the First Amendment deprivation because Pfister was deliberately indifferent to his duty of reviewing prisoners' grievances by delegating this duty to other prison staff. Not only does the Illinois Administrative Code allow wardens to delegate this task, 20 Ill. Admin. Code §§ 504.805(a), 504.830(e), but any suggestion that violating the Illinois Administrative Code amounts to a constitutional violation is untenable under Seventh Circuit law. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (violation of "state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."). Furthermore, Saleh's arguments based on Pfister's "deliberate indifference" are misplaced because the deliberate indifference standard concerns Eighth Amendment conditions of confinement and prison medical claims, *see Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020), or *Monell* failure to train claims. *See J.K.J. v. Polk County,* 960 F.3d 367, 380 (7th Cir. 2020) (en banc). The Court grants this aspect of defendants' motion to dismiss.

*Equal Protection Claim*

In Count II, Saleh brings an Equal Protection claim asserting that Dethrow intentionally discriminated against him based on his religion. "The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials." *Lauderdale v. Illinois Dep't of Human Serv.*, 876 F.3d 904, 909–10 (7th Cir. 2017) (citation omitted). In general, the Equal Protection Clause and the Establishment Clause prohibit prison officials from treating members of some religions more favorably than others. *See Kaufman v. Pugh*,

4

733 F.3d 692, 696 (7th Cir. 2013). To establish an Equal Protection claim, a plaintiff must show purposeful or intentional discrimination, which exists when "a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996) (citation omitted). A showing that a defendant was negligent will not suffice. *Id.*

In support of his Equal Protection claim, Saleh alleges that defendant Dethrow allowed Christian inmates to attend rescheduled commissary trips to accommodate their religious services and classes in contrast to Dethrow's refusal to accommodate his religious needs in September 2017. In the May 2020 ruling, the Court concluded that Saleh's allegation of an isolated event that adversely affected him did not plausibly suggest an Equal Protection violation. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) ("mere inconsistency in prison management [] may not in itself constitute a cognizable equal protection claim.") (citation omitted).

Saleh disputes this conclusion arguing that Dethrow's intentional conduct existed within the context of other Stateville officials' unequal treatment of Muslim prisoners. Specifically, Saleh maintains that Stateville has never had a Muslim in its Chaplain's office during his incarceration, did not set holiday schedules to accommodate Muslim services, put stringent requirements on Muslim but not Christian volunteer instructors, among other examples of the alleged unequal treatment.

From these allegations, it appears that Saleh is attempting to bring a *Monell* pattern and practice claim, and, as discussed in the May 2020 ruling, any such claim for money damages is prohibited under the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Nonetheless, Saleh is also seeking injunctive relief, therefore, the Court turns to whether he has plausibly alleged a *Monell* pattern and practice claim. To sufficiently allege the existence of a widespread practice so permanent that it constitutes a policy with the force of law, Saleh must set forth some facts that his incident was not an isolated or

5

random occurrence. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). "[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, 'except that it must be more than one instance.'" *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (citation omitted). Recently, for example, the Seventh Circuit concluded three instances that lower bunk inmates' prescription needs were ignored did not establish a widespread that had the force of law. *Bridges v. Dart*, 950 F.3d 476, 480 (7th Cir. 2020).

Here, not only has Saleh alleged just one instance of having to choose between prayer services and going to the commissary, but his allegations concerning how Stateville officials generally treat Muslim inmates are unconnected and dissimilar to his September 2017 incident, and thus do not save this claim. *Id.* In the end, whether Saleh brought his *Monell* pattern and practice claim under the First Amendment or the Equal Protection Clause, he has failed to plausibly allege any such claim based on a single incident. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court therefore grants defendants' motion to dismiss Count II with prejudice.

*RLUIPA Claim*

In Count III, Saleh brings a claim under RLUIPA based on Dethrow forcing him to make a choice between going to Jumu'ah or the commissary. RLUIPA states that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc–1(a). Although RLUIPA does not define "substantial burden," the Supreme Court has held that a substantial burden exists when an inmate is required to "engage in conduct that seriously violates [his] religious beliefs." *Holt*, 574 U.S. at 361 (citation omitted). RLUIPA confers greater religious rights than under the Free Exercise Clause. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012).

Viewing the facts in Saleh's favor, he alleges that Dethrow restricted him from obtaining halal food and certain hygiene products, which are integral to his religious practices. Saleh's RLUIPA claim based on these facts has legal support, as discussed above, including the Seventh Circuit's opinion in *Jones v. Carter* and the Supreme Court's decision in *Holt*. RLUIPA's expansive protection of religious liberty further supports this conclusion. Accordingly, Saleh has plausibly alleged his RLUIPA claim.

On a final note, Saleh can only seek injunctive relief under RLUIPA, which is against warden Gomez in his official capacity claim. *Grayson*, 666 F.3d at 451 ("the Act does not create a cause of action against state employees in their personal capacity."). This is allowable under the circumstances because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (citation omitted). Moreover, despite Saleh's arguments to the contrary, Pfister and Dethrow are not defendants to this count because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71; *see also Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

**Conclusion**

For the foregoing reasons, this Court grants in part and denies in part defendants' motion to dismiss [114]. The Court dismisses defendant Randy Pfister from this lawsuit.

IT IS SO ORDERED.

Date: 1/27/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

7