**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ABDEL JABER SALEH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1812 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| RANDY PFISTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is about a prison inmate allegedly being forced to choose between a shopping trip to the prison commissary and a Friday Muslim prayer service. It is in its third version. [Dkt. ## 7, 55, 107]. It has consumed over two years of discovery. It has become a poster child for the concept of "proportionality" under Fed.R.Civ.P. 26(b)(1). Over more than two years of discovery, plaintiff has served seven sets of written discovery requests, conducted twelve depositions, and received over 1,700 pages of documents, a portion of which came from two separate ESI searches. He has received the benefit of judicial intervention to gain discovery, when warranted, on his behalf on more than one occasion. But plaintiff has grown greedy in the wake of that and his appetite for discovery that goes beyond even the peripheries of this case has increased since the filing of his second amended complaint. [Dkt. #107]. The Defendants have filed a Motion for the Entry of a Protective Order. As explained below, the motion [Dkt. #141] is granted.

**A.**

While there is a lot contained in the parties' submissions, as can best be gleaned from them here is what plaintiff is demanding and what the defendants have provided:

1. *All* grievances and grievance responses submitted by all inmates at Stateville from 2015 to present,[1] concerning allegations of unequal treatment of, or discrimination against *any* Muslim or Muslims. Defendant performed two manual searches to locate any such grievances filed by other inmates: (1) a manual search through the master files of specific inmates on a list provided by plaintiff, and (2) a manual search through the grievances on file with the Administrative Review Board ("ARB") based on a list generated with certain search criteria. These searches were conducted by four different IDOC correctional facilities, as well as the ARB. After completion of these searches, defendants produced all such grievances that could be located from September 1, 2017 to the present. Plaintiff wants five years of grievances and additional manual searches using different search terms.

2. All documents related to, concerning or reflecting disciplinary actions, performance appraisals or reviews of defendants, Dethrow and Pfister, whether or not they have to do with the plaintiff, his grievances, similar grievances. Defendants have certified that "no 'disciplinary actions' were rendered as a result of the incidents alleged in Plaintiff's Second Amended Complaint, nor were the incidents alleged in Plaintiff's Second Amended Complaint the subject of any 'performance appraisals' or 'reviews' of" either Defendant."

3. ESI Searches. Defendants conducted an ESI Search for communications related to the September 8, 2017 commissary incident, using the custodians, Dethrow, Pfister, Sherwin Miles, and David Gomez, and using the terms "Saleh", "Muslim", and plaintiff's inmate number. Documents were produced on September 4, 20202. On December 4th, eleven days before the close

---

[1] The applicable statute of limitations in this case is two years. 735 ILCS 5/13-202; *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019).

of discovery, plaintiff demanded that defendants run nine additional custodian ESI searches. Defendants also performed ESI searches regarding the grievances going back in time. None of the named defendants were involved in the incidents alleged in those old grievances. The defendants searched grievances from May 1, 2015 to December 31, 2016, because the background allegations in Plaintiff's third Complaint cover May 2015 to August 2016. But, plaintiff demands that the search go from May 2015 all the way through to the present day. In short, plaintiff has been given a lot, but wants a lot more.

Of course, courts have wide discretion with respect to discovery matters like this one. *See Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014); *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013); *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009). Discretion denotes the absence of hard and fast rules. *Langnes v. Green*, 282 U.S. 531, 541 (1931); *Rogers v. Loether*, 467 F.2d 1110, 1111–12 (7th Cir. 1972)(Stevens, J.). Most often, there are no right or wrong answers, because discretion connotes a range, not a point. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). Indeed, on a virtually identical set of facts, two decision makers can arrive at opposite conclusions, both of which can constitute appropriate exercises of discretion and both be affirmed on appeal. *Mejia v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011); *United States. v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."); *McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), aff'd, *McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987); *Elliot v. Mission Trust Services, LLC*, 2015 WL 1567901, 4 (N.D. Ill. 2015). Indeed, a party can only

overturn a discovery ruling where there has been an abuse of discretion, which can be found only when no reasonable person could agree with the district court's decision. *Adams v. City of Indianapolis*, 742 F.3d 720, 727 (7th Cir. 2014); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013).

Discovery sought must not only be relevant, but it must be "proportional" to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1), Federal Rules of Civil Procedure. *See also, Buonavolanto v. LG Chem, Ltd.*, 2019 WL 8301068, at *2 (N.D. Ill. 2019);[2] *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). The 2015 amendments to Rule 26 emphasize, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, Advis. Comm. Notes for 2015 Amendments (emphasis added); *Buonavolanto*, 2019 WL 8301068, at *2.

Proportionality, like other concepts, requires a common sense and experiential assessment.

---

[2] The concept of proportionality did not make its first appearance in the Federal Rules of Civil Procedure with the 2015 Amendments. It originally appeared as part of Rule 26(b)(2)(C)(iii). *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114 (S.D.N.Y. 2016); *Certain Underwriters at Lloyds v. Nat'l RR Passenger Corp.,* 318 F.R.D. 9, 14 (E.D.N.Y. 2016). Renumbering the proportionality requirement and placing it in Rule 26(b)(1) was designed to put a greater emphasis on the need to achieve proportionality than was thought to previously have existed given its placement in the structure of Rule 26. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). The renumbering of the proportionality requirement was thought to restore and emphasize the role proportionality was to play in discovery. *Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc.*, 2016 WL 11220848, at *3 (D.N.J. 2016). *See* the lengthy and informative discussion in Linda Simard, *Seeking Proportional Discovery: The Beginning of the End of Procedural Uniformity in Civil Rules*, 71 Vanderbilt L.Rev., 1919 (2018).

*See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018). Indeed, Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id.* The Chief Justice also stressed that "[t]he key here is careful and realistic assessment of actual need" that may "require the active involvement of ... the federal judge to guide decisions respecting the scope of discovery." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016).

The present state of discovery in this case and the current demand by the plaintiff, present a perfect case for the application of proportionality – especially when one considers the amount of discovery produced, and adds to that the amount of discovery plaintiff continues to demand – not to mention how far that discovery strays from the incident charged in the Complaint – and weighs that against allegedly being forced to choose between a prayer service or a commissary trip. The scale of proportionality collapses under the weight of plaintiff's unceasing demands. The plaintiff's demands are even more extravagant and improper when viewed through the lens of Judge Coleman's ruling dismissing portions of plaintiff's Second Amended Complaint with prejudice.[3]

The claimed right at stake here – freedom of religion – is significant, and, in view of that,

---

[3] About three weeks after the parties briefed their discovery dispute, based on the allegations of the plaintiff's Second Amended Complaint, Judge Coleman dismissed portions of that third version with prejudice. [Dkt.# 153]. Of course, the case being on separate discovery and substantive tracks, the parties did not have the opportunity to couch their arguments in terms of what Judge Coleman has allowed to stand following her recent ruling. But, there was need for that. Because I find that plaintiff's discovery demands far exceeded what was appropriate given the allegations of the Second Amended Complaint, and Judge Coleman's decision serves only to provide further bases to grant defendants' motion, there is no need for the parties to incur further expense on additional briefing and for further taxing of judicial resources on this discovery dispute.

5

plaintiff has been given substantial leeway in discovery over the previous two years. But there is the "right," and there is the incident that is being litigated as emblematic and infringing of that right. That incident does not allow plaintiff to enjoy unfettered discovery that strays far from the complained of incident, and which, if allowed, would violate basic concepts of proportionality. The leeway that has been accorded to plaintiff's discovery demands thus far cannot be allowed to persist given the far-reaching and unbridled requests now at issue.

Fact discovery closed on December 15th [Dkt.# 115], but plaintiff ramped up his demands late in discovery. Each time reasonable searches and reasonable productions were made, plaintiff demanded more. Perhaps the court has had a hand in this, as it has taken a somewhat lenient stance given the significance of the right at stake. But "enough is enough." *Williams v. Shinseki,* 2010 WL 1274233, 4 (7th Cir. 2010). When what is left of plaintiff's current Complaint is scrutinized, common sense – which always has a role to play, *United States v Montoya De Hernandez*, 473 U.S. 531, 542 (1985), and proportionality dictate that the leniency afforded the plaintiff up to now, within the court's discretion, should come to an end. Given the incident that forms the basis of plaintiff's Complaint, his allegations regarding it – and when he came up with them – and the applicable law, plaintiff has had ample discovery to prove his case, if it turns out that he has one. As Judge Moran succinctly put it, "[p]arties are entitled to a reasonable opportunity to investigate the facts-and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994).

**B.**

The plaintiff in this case – which is almost three years old – alleges that on September 8, 2017, he asked Defendant, Dethrow, if he could go to the commissary on the first line that day, because he wished to attend Jumu'ah services beginning at approximately noon that afternoon. [Dkt.

#107, ¶. 35]. Plaintiff concedes that it was within Defendant Dethrow's discretion to allow or disallow him to go to the commissary at a different time than plaintiff was scheduled. [Dkt. #107, ¶. 35]. Defendant Dethrow declined. [Dkt. #107, ¶. 35]. As a result, the plaintiff had to choose between a trip to the commissary and Jumu'ah prayers. He chose the prayers.

If we left it at that, it would be clear that the discovery that plaintiff is demanding is woefully out of proportion to the needs of this case. Plaintiff appears to wager all on a single sentence from the Order precipitated by one of the many and seemingly endless discovery disputes in this case: "produce all documents, wherever located, that relate to the incidents leading to plaintiff's grievance, any investigation done regarding the grievance, and any determinations made regarding that grievance." [Dkt. #145, at 7-8; #121, at 6]. How that encompasses any grievance filed by any inmate even beyond the statute of limitations is mystifying. It may be that plaintiff hoped to bring that to bear on some type of *Monell* claim, but Judge Coleman's recent analysis and ruling has foreclosed that.

In short, the plaintiff's interpretation of that Order can only be called fantastic. Again, perhaps a bit of common sense ought to be injected into these proceedings, especially in terms of proportionality (not to mention relevance).[4] "Grievance" meant, and means, the incident this case is about. Note the words in the sentence: "the" grievance and "that" grievance. That's the opposite of the "any" and "all" interpretation plaintiff has somehow inexplicably come up with. "Leading up to" meant, and means, directly leading up to that grievance, not everything that has ever happened that is remotely similar going back five years. That, again, is a matter of common sense.

---

[4] The Supreme Court has said that the concept of relevancy in discovery should be firmly applied. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See also* Frank Easterbrook, *Discovery is Abuse*, 69 B.U.L.Rev. 635 (1989).

And, as a matter of common sense and the exercise of the court's expansive discretion, the defendant's motion should be and is granted.

Beyond that, while it is difficult to fathom the relevance of this mass of discovery – especially after the dismissal of certain claims with prejudice – it is so unlikely to be admissible at trial that, even if somehow marginally relevant, the fact it is completely out of "proportion" to this case should be clear. While Rule 404(b) can have application in civil cases, Jeffrey Cole, *Bad Acts Evidence in Civil Cases Under Rule 404(b): It's Not Just for Prosecutors Anymore*, 37 LITIGATION 47 (Spring 2011), it cannot be used in any context to prove that an individual had a propensity to act in the future as he or she had in the past. *See Huddleston v. United States*, 485 U.S. 681, 685 (1988); *Armstead v. MacMillan*, 58 F. App'x 210, 214 (7th Cir. 2003)(foreclosing use of evidence regarding other inmate's grievance to suggest officials "did the same to [plaintiff]."); *Williamson v. Twaddell*, 2011 WL 5826058, at *1 (C.D. Ill.2011)("Evidence of disciplinary action against [guard] regarding incidents unrelated to Plaintiff's claim would not be relevant to show that [guard] violated Plaintiff's religious rights. . . . Similarly, to the extent Plaintiff seeks complaints by other inmates against [the guard] . . . Finding these other grievances would require a review of the master files of thousands of inmates, a burden which substantially outweighs any imagined marginal probative value. The fact that another inmate filed a grievance against [guard] would show only that he filed a grievance, not that the grievance had any merit or that the grievance had anything to do with this case."); *Gomez v. Palmer*, 2016 WL 212800, at *3 (N.D. Ill. 2016)("Further, allowing evidence of other lawsuits and grievances could 'result in mini-trials on the merits of those litigations, adding substantial delay to the...trial."); *Williams v. Blagojevich*, 2010 WL 456761, at *5 (S.D. Ill. 2010)("Any previous failure to treat is not admissible proof as to whether Dr. [] failed

to document and treat serious medical needs on August 6, 2004."); *Whitmore v. Walker*, 2008 WL 1758535, at *1 (S.D. Ill. 2008)("Plaintiff wants to discover other complaints of mistreatment so that he can use that information to bolster his claim that defendants "mistreated" him also. However, Rule 404(b) expressly forbids the use of evidence of other acts for this purpose."). While discovery sought need not be admissible at trial, it must in all settings satisfy the "proportionality" requirement. Fed. R. Civ. P. 26(b)(1). ("Information *within this scope* of discovery need not be admissible in evidence to be discoverable." (emphasis added)). The discovery at issue here does not. And it only makes matters worse that it also does not even appear to be admissible.

### C.

Overall, in Rule 26(b)(1) proportionality terms, isn't a question of enough is enough, it's a question of too much is more than enough. From any perspective, the defendants' motion clearly has to be granted. That being said, it might be worthwhile to tangentially address proportionality in terms of importance: of the issues at stake in the action, the amount in controversy, the importance of the discovery in resolving the issues.

Plaintiff chose to attend prayers and skip his shopping trip. "O you who believe! When the call for Friday prayer is made, hasten towards the remembrance of Allah (Prayer and Khutba) and *leave all transactions*. This is best for you if you know." (Sura al-Jumu'a, V: 9). So, plaintiff made a choice that millions must make every Friday. His faith acknowledges that the profane will provide obstacles to the sacred, but makes the hierarchy – and the proper choice – clear. Indeed, Judge Coleman *dismissed* plaintiff's Complaint, without prejudice. [Dkt. #103]. But, back on June 25, 2020, plaintiff filed a *third* version of his Complaint. In this most recent version, he claimed that his shopping trip that day was *also* part of his faith. According to that third version of plaintiff's

9

Complaint:

> Saleh's beliefs require that he maintain personal hygiene as instructed by the Quran, which in turn requires he obtain personal hygiene products from the commissary. By forcing Saleh to choose between the Jumu'ah service and the commissary trip, Dethrow forced Saleh to modify his behavior in relation to his religion.
>
> Dethrow's action also prevented Saleh from obtaining Halel meals, something Stateville refused to provide other than through individual purchases at the commissary. Dethrow by his actions forced Saleh to modify his behavior in relation to this religion.

[Dkt. #107, Pars. 58-59].

So, in this third try, plaintiff makes a claim that either way, he was going to have to ignore a tenet of his faith. Judge Coleman, in her recent ruling, felt that stated a plausible claim. But there are a couple of observations to be made about that claim in the context of the sweeping discovery demands plaintiff has leveled against the defendants.

First, and foremost, the allegation that the trip to the commissary was necessary to procure items central to plaintiff's faith did not appear until over two years into this case. That lengthy delay seems odd, to say the least, given the now claimed importance of the matter and its centrality to the plaintiff's claims. More curiously, it only came on the heels of Judge Coleman's May 6, 2020 Opinion dismissing the previous, second version of plaintiff's Complaint in which she wrote:

> That Dethrow and others prohibited Saleh from going to the commissary for approximately three to four weeks to buy "essential hygiene products" such as soap, along with pens, paper, and snacks does not amount to a substantial burden under the Free Exercise Clause. This is because Saleh's inability to buy these items at the commissary did not affect his religious practices. If, for example, Saleh had alleged that he was denied access to the commissary to buy halal meat or other foods required by his religion, he would have stated a plausible claim.

[Dkt. #103, at 3].

So, it was not until some inadvertent guidance from the district court that plaintiff realized,

over two years into this case, that his shopping trip was for halal meat. Surely, a professing Muslim such as plaintiff alleges he is would have been aware of that all along. Moreover, also, presumably, would his counsel, as halal is far more familiar to western non-Muslims than Jumu'ah. Yet it was not mentioned until after Judge Coleman issued her Opinion. If plaintiff was unconcerned with it for over two years, we must ask how important, in Rule 26(b)(1) proportionality terms, it can be to him? Weighing the massive amount of discovery and the burden imposed against an allegation that seems to have occurred on second thought, one has to wonder – but not overly and not for long.

Again, there is a difference between the right asserted and the incident. So far in this case we are taking plaintiff's word for tenets of the Muslim faith and their importance to him. We have to accept his allegations under pleading standards. We cannot say plaintiff's claims are implausible, but we have to be mindful of how, even with a plausible claim, the discovery process can easily get out of hand. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007)("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)(" Rule 8. . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). As such, in managing discovery, we do not and ought not have to leave common sense and experience at the courthouse door. *See Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004); *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 744 (8th Cir. 2018); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018); *Paschini v. WaveCrest Payment Servs. of Americas, Inc.*, 2020 WL 1911574, at *2 (S.D. Cal. 2020). And common sense has already told us that discovery has gotten out of hand now and defendants' motion

11

should be granted.

But we wish to make clear and underscore that this ruling is about this particular claim and this particular discovery, and not religious rights in general. Other cases with other issues and facts must be evaluated on their own records. In all cases, however, to advance a First Amendment claim, a plaintiff must show that defendants placed a "substantial burden" on his ability to practice his religion. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989); *Thompson v. Bukowski*, 812 F. App'x 360, 364 (7th Cir. 2020). "A substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation omitted). Those beliefs must be sincerely held religious beliefs, *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015), and the "burden must be more than a mere inconvenience to rise to the level of a constitutional injury; it must place 'significant pressure'" on the plaintiff "to 'forego religious precepts' or to engage in 'religious conduct.'" *Vision Church v. Village of Long Grove*, 468 F.3d 975, 999 (7th Cir. 2006) (citation omitted).

So, did the charged conduct here impose a "substantial burden" on the plaintiff's rights? That is a matter for summary judgment or trial. But, in Rule 26(b)(1) proportionality terms, we do not know from the Complaint or the context of this case how substantial a burden missing one Jumu'ah prayer is, generally or for plaintiff specifically. We certainly do not know the same answers for missing shopping for halal meat on one occasion – of which no mention was made for a very long time. We do know that particular tenet of plaintiff's asserted faith only occurred to him two years into this lawsuit. Of course, we are not remotely suggesting, let alone arguing that one faith is or should be viewed as more important than any other. It should not. But, the new information now sought by the plaintiff is not proportional to the needs of the case.

In the context of the charge and the extensive discovery that has ensued, plaintiff has had more than ample discovery to flesh out his claim – a claim that has also now been recrafted three times. Events outside the statute of limitations, burdensome searches of records going back five years at various locations, deposition after deposition, etc., are simply out of proportion to *this* case. What is sought now goes well beyond production of documents, wherever located, that relate to the incidents leading to plaintiff's grievance. [Dkt. #145, at 7-8]. Again, common sense, which must be a part of the analysis, *cf. United States v. DeHernandez*, 473 U.S. 531, 543 (1985), and the present attempt by the plaintiff to discover whatever comes to his mind is well outside the limitations imposed by the proportionality requirement of the Federal Rules of Civil Procedure. What our Court of Appeals said in another context applies here: "there was enough discovery to choke a horse. Enough is enough." *Banos v. City of Chicago*, 398 F.3d 889, 893 (7th Cir. 2005). *Accord Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008).

Accordingly, the defendants' objections to (1) plaintiff's demand that IDOC perform two additional ESI searches; (2) plaintiff's demand that IDOC perform searches for grievances that other inmates filed from January 1, 2015 through August 31, 2017; and (3) plaintiff's demand that defendants produce the complete personnel files of Randy Pfister and Joey Dethrow; are all sustained and plaintiff is barred from requesting any additional discovery from defendants.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/1/21